UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ARIEL ROMAN,** ) | |
| ) | **Case No.** |
| **Plaintiff,** ) | |
| ) | **Judge** |
| **v.** ) | |
| ) | **Magistrate Judge** |
| **THE CITY OF CHICAGO, a Municipal** ) | |
| **Corporation, and CPD OFFICERS** ) | |
| **P.O. MELVINA BOGARD and P.O.** ) | |
| **BERNARD BUTLER, Individually,** ) | |
| ) | **JURY DEMAND** |
| **Defendants.** ) | |

## COMPLAINT AT LAW

**NOW COMES** the Plaintiff, ARIEL ROMAN by and through his attorneys, The Gloria Law Group, Gregory E. Kulis & Associates, Ltd., and The Action Law Group and complaining against the Defendants, THE CITY OF CHICAGO, a Municipal Corporation, and Chicago Police Officers P.O. MELVINA BOGARD and P.O. BERNARD BUTLER, Individually, as follows:

## INTRODUCTION

1. This is a civil rights action. On February 28, 2020, at approximately 4:00 p.m., an unarmed thirty-three (33) year-old Latino man, ARIEL ROMAN, without cause or provocation, was harassed, chased, tackled, pepper-sprayed, tasered, and shot twice by Defendant Chicago Police Officers P.O. MELVINA BOGARD and P.O. BERNARD BUTLER at the Grand Avenue Red Line Station located at 521 N. State Street in Chicago (also known as a Chicago Transit Authority "CTA" station).

2. Both Officers, with less than three (3) years of experience working with the Chicago Police Department ("CPD"), and without proper training, direction, or supervision, were assigned to the department's Mass Transit Unit.

3. Defendants BOGARD and BUTLER first encountered ARIEL ROMAN when he crossed into their train car while suffering an anxiety attack. The Defendant Officers began harassing ARIEL ROMAN after he replied that he "felt threatened" when asked why he crossed the train car.

4. Crossing the CTA train cars is a minor city ordinance violation and at no time did Defendant Officers attempt to issue ARIEL ROMAN a citation or request his identification.

5. The train car encounter ended when ARIEL ROMAN exited the train car, without being placed under arrest or with any indication that the Officers were placing him under arrest. Defendant Officers BOGARD and BUTLER then chased ARIEL ROMAN onto the station platform and jumped on his back. A struggle ensued during which ARIEL ROMAN never attempted to strike or attack the Defendant Officers. During the struggle, Defendant BUTLER escalated the situation and ordered his partner, Defendant BOGARD, to "shoot him" with pepper spray after ARIEL ROMAN was tasered. Defendant BOGARD complied with all her partner's commands. Her partner then gave the command to "SHOOT HIM" which BOGARD in fact thereafter shot ARIEL ROMAN in the stomach. Unarmed and afraid for his life, Plaintiff ARIEL ROMAN turned to run up the escalator stairs to escape from being shot and killed. Defendant BOGARD then shot him again in the buttocks.

6. As a result of BOGARD's actions and BUTLER's commands, ARIEL ROMAN sustained severe critical bodily injuries for which the Defendants are liable.

7. Defendant BOGARD was hired by the Chicago Police Department and admitted to the Chicago Police force knowing that BOGARD was previously arrested and charged with assaulting a McDonald's restaurant worker in 2015.

8. This incident is yet another example of the continuing injustice and maltreatment of minority citizens by CPD officers.

9. The Mayor of the City of Chicago, Honorable Lori Lightfoot, after being apprised of the ARIEL ROMAN shooting and having viewed the video stated: "… the video is extremely disturbing and the actions of these officers are deeply concerning."

## BACKGROUND

10. In December 2015, the U.S. Attorney General launched a broad civil rights investigation into CPD's policing practices.[1] The purpose of this investigation was (among other things):

   a. to determine whether the CPD is engaging in a pattern or practice of unlawful conduct, and if so, what systemic deficiencies or practices within CPD, IPRA, and the City might be facilitating or causing this pattern or practice. (*Id.,* at 1);

   b. to assess CPD's use of force and address CPD policies, training, reporting, investigations, and review related to officer use of force. (*Id.*); and

   c. to examine the CPD's handling of incidents involving those in crisis, whether related to addiction, trauma, or mental health (*Id.*).

11. In January 2017, the U.S. Department of Justice released the results of its investigation, finding a longstanding, pervasive "pattern and practice" of civil rights abuses by the CPD. Among other conclusions, the U.S. Department of Justice concluded that:

   a. the CPD engages in a pattern and practice of utilizing unreasonable use of force that is perpetuated by CPD policies and practices. (*Id.*, at p. 32);

   b. the CPD's pattern and practice of unreasonable force includes the use of excessive force against people who present no threat. (*Id.*);

   c. the use of unreasonable force to quickly resolve non-violent encounters is a recurrent issue at CPD, including incidents in which CPD officers use retaliatory force against people who object and claim that they were unlawfully stopped by CPD. (*Id.,* at p. 32-33);

---

[1] DOJ Civil Rights Division and United States Attorney's Office Northern District of Illinois, Investigation of Chicago Police Department, at 4 (January 13, 2017).

      d. the CPD has failed to achieve effective crisis intervention techniques to reduce the need for force, including during incidents involving individuals with mental health issues. (*Id.*, at p. 37); and

      e. the CPD's de-escalation policies and trainings are deficient (*Id.,* at p. 45-46).

12. In June 2017, the MacArthur Justice Center, Northwestern University School of Law's Bluhm Legal Clinic, and the University of Chicago Mandel Legal Clinic formed a coalition of attorneys, community organizations, and Plaintiffs, and filed *Campbell v. City of Chicago*, a historic class action lawsuit seeking federal court oversight of the CPD's operations.

13. In August 2017, the Office of the Illinois Attorney General sued the City of Chicago regarding CPD's civil rights abuses. Both *Campbell v. City of Chicago* and the Attorney General's lawsuits led to a Consent Decree, effective March 1, 2019 ("Consent Decree").[2]

14. The overall purpose of the Consent Decree was to "ensure that the City and CPD deliver services in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety. In addition, [the Consent Decree] seeks to ensure that the Chicago police officers are provided with the training, resources, and support they need to perform their jobs professionally and safely. [The Consent Decree] requires changes in the areas of community policing; impartial policing; [and] use of force . . ." (Consent Decree at ¶ 2).

15. As part of the Consent Decree, the court appointed an Independent Monitor to oversee the City of Chicago's progress in meeting the Consent Decree's requirements.

---

[2] http://chicagopoliceconsentdecree.org/wp-content/uploads/2019/02/FINAL-CONSENT-DECREE-SIGNED-BY-JUDGE-DOW.pdf

\                                                 4

16. On November 15, 2019, the Independent Monitor released findings that the City of Chicago failed to comply with the majority of the reforms set forth in the Consent Decree.[3] In particular, the Monitor found that the City missed **37 of 50** agreed-upon deadlines, including failures to meet "preliminary compliance," which is simply defined as "create[ing] a compliant policy."

17. The Independent Monitor found that the City of Chicago failed to meet its obligation under the following related Consent Decree provisions:

   a. Community Policing: The Consent Decree set forth various guiding principles to improve community policing, including "strong community partnerships and frequent positive interactions between police and members of the public . . . "; ". . . build and promote public trust and confidence in CPD and ensure constitutional and effective policing, officer and public safety . . ."; and "CPD will ensure that its community policing philosophy is a core component of its provision of police services . . .". (Consent Decree, at ¶¶ 8-10). In 2017, the Community Policing Advisor Panel made various related recommendations. (*Id.,* at ¶ 13). **The Independent Monitor found the City has failed to even develop a plan for implementing these recommendations.** (Independent Monitoring Report, at p. 38).

   b. Impartial Policing: "In conducting its activities, CPD will provide police services to all members of the public without bias and will treat all persons with the courtesy and dignity which is inherently due every person as a human being without reference to stereotype based on race, color, ethnicity, religion, homeless status, national origin, immigration status, gender identity or expression, sexual orientation, socio-economic class, age, disability, incarceration status, or criminal history." (Consent Decree, at ¶ 50). **The Internal Monitor found CPD did not achieve compliance at any level.** (Independent Monitoring Report, at p. 49).

   c. Use of Force: CPD's use of force policies are to include "de-escalation techniques to prevent or reduce the need for force whenever safe and feasible; when using force, CPD officers only use the force that is objectively reasonable, necessary, and proportional under the totality of the circumstances . . .". (Consent Decree, at ¶ 155). **CPD failed to timely adhere to 16 of the Consent Decree's related "Use of Force" requirements.** (Independent Monitor Report, at p. 57).

---

[3] *See* "Independent Monitoring Report," https://news.wttw.com/sites/default/files/article/file-attachments/2019_11_15%20Independent%20Monitoring%20Report%201%20%28Filed%29.pdf

## COUNT I

### EXCESSIVE FORCE § 42 USC § 1983
### FIRST SHOT BY P.O. MELVINA BOGARD

1-17. The Plaintiff hereby realleges and incorporates his allegations of Paragraphs 1-17 of the Introduction as his respective Paragraphs 1-17 of Count I as though fully set forth herein.

18. This action is brought pursuant to the laws of the United States Constitution, specifically, 42 U.S.C. §1983 and §1988, and the laws of the State of Illinois, to redress deprivations of the Civil Rights of the ARIEL ROMAN, accomplished by acts and/or omissions of the Defendants, P.O. MELVINA BOGARD and P.O. BERNARD BUTLER, committed under color of law.

19. Jurisdiction is based on Title 28 U.S.C. §1343 and §1331 and supplemental jurisdiction of the State of Illinois.

20. The Plaintiff, ARIEL ROMAN, was at all relevant times a United States Citizen and resident of the State of Illinois.

21. At all relevant times the Defendants, P.O. MELVINA BOGARD and P.O. BERNARD BUTLER, were duly appointed Chicago Police Officers acting within the scope of their employment and under color of law.

22. The CITY OF CHICAGO is a statutory municipal corporation and the employer of the Defendants.

23. On February 28, 2020, the Plaintiff was being seized for traveling between subway cars at or near the redline CTA station in the vicinity of Grand Ave. and State Street in Chicago, Illinois.

24. The Defendants, P.O. MELVINA BOGARD and P.O. BERNARD BUTLER, who were at the scene decided to take the Plaintiff into custody.

25. The Defendants, P.O. MELVINA BOGARD and P.O. BERNARD BUTLER, jumped on the Plaintiff's back to take him into custody.

26. The Defendant Officers attempted physically subduing Plaintiff and a struggle ensued amid the confusion brought upon by the officers.

27. Plaintiff was pepper sprayed in the face, shot with a taser gun, and tazed by a hand-held taser by the Defendant-Officers during the confusion.

28. After being pepper sprayed Plaintiff stood up staggering to his feet, rubbing his eyes, and orally pled with the Defendant Officers to calm down.

29. At the direction of Defendant BUTLER, Defendant BOGARD pulled her weapon and shot the Plaintiff.

30. The first shot struck the Plaintiff in the abdomen.

31. At the time Defendant BOGARD shot the Plaintiff, he had not threatened Defendant BOGARD.

32. At the time Plaintiff was shot he did not have anything in his hands.

33. At the time Plaintiff was shot, he did not attack Defendant BOGARD.

34. Therefore, Defendant BOGARD's use of deadly force was excessive and unreasonable.

35. Video footage of this shooting was captured by an eyewitness at the CTA Red Line Station and has been viewed over 4.6 million times on Twitter and various social media platforms. Surveillance footage from CTA cameras also captured the incident.

36. ARIEL ROMAN was thereafter charged criminally with resisting arrest, narcotics possession, and the ordinance violation for crossing the subway car.

37. Within forty-eight (48) hours of the shooting, the interim Superintendent of the Chicago Police Department, Charlie Beck, requested that the Cook County State's Attorney's Office dismiss the criminal charges against the Plaintiff.

38. On Sunday, March 1, 2020, the Cook County State Attorney approved a dismissal of the charges and they were summarily dismissed against the Plaintiff.

39. Currently, there are no pending criminal charges against the Plaintiff for this incident.

40. Defendant-Officers have been stripped of their police powers.

41. The actions of the Defendant, P.O. MELVINA BOGARD, were intentional, willful, and wanton.

42. The actions of the Defendant, P.O. MELVINA BOGARD, were pursuant to the customs, policies, and practices of the Chicago Police Department.

43. The actions of the Defendant, P.O. MELVINA BOGARD, violated ARIEL ROMAN's constitutional rights as protected by 42 U.S.C. § 1983.

44. As a result of the actions of Defendant P.O. MELVINA BOGARD, the Plaintiff suffered extreme pain and suffering, economic and non-economic losses, emotional distress, fear and loss of enjoyment of life, and permanent debilitating injuries.

**WHEREFORE**, the Plaintiff, ARIEL ROMAN, prays for judgement against the Defendant, P.O. MELVINA BOGARD, for reasonable compensatory damages, punitive damages, plus costs.

## COUNT II
## FAILURE TO INTERVENE/PROVOCATION/ P.O. BERNARD BUTLER

1-44. Plaintiff hereby re-alleges and incorporates his allegations of paragraphs 1-44 of Count I as his respective allegations of paragraph 1-44 of Count II as though fully set forth herein.

\\ 8

45. During the struggle the Defendant P.O. BERNARD BUTLER, rather than properly deescalating the situation and/or properly taking him into custody, ordered his partner, P.O. MELVINA BOGARD, on several occasions to "shoot him."

46. The explicit words and actions of Defendant P.O. BERNARD BUTLER failed to intervene in the situation and in fact provoked Defendant P.O. MELVINA BOGARD to act and shoot Plaintiff, ARIEL ROMAN.

47. The Defendant, P.O. BERNARD BUTLER, has a legal duty and obligation to intervene in violence as opposed to yelling at his fellow officer to "shoot him."

48. At no time was there any necessity to use deadly force.

49. The actions of Defendant, P.O. BERNARD BUTLER, were intentional, willful and wanton.

50. The actions of the Defendant, P.O. BERNARD BUTLER, violated ARIEL ROMAN's constitutional rights as protected by 42 U.S.C. § 1983.

51. As a result of the actions, inactions, and words of the Defendant, P.O. BERNARD BUTLER, the Plaintiff suffered extreme pain and suffering, economic and non-economic losses, emotional distress, fear and loss of enjoyment of life, and permanent debilitating injuries.

**WHEREFORE**, the Plaintiff, ARIEL ROMAN, prays for judgement against the Defendant, P.O. BERNARD BUTLER, for reasonable compensatory damages, punitive damages, plus costs.

**COUNT III**
**EXCESSIVE FORCE § 42 USC § 1983**
**SECOND SHOT BY P.O. MELVINA BOGARD**

1-51. Plaintiff hereby re-alleges and incorporates his allegations of paragraphs 1-51 of Count I and II as his respective allegations of paragraph 1-51 of Count III as though fully set forth herein.

52. Plaintiff ran up the escalator stairs of the CTA station after being shot in an effort to escape from being shot again and killed by the Defendant Officers.

53. At all times during this incident Plaintiff ARIEL ROMAN was unarmed and did not present a threat requiring use of deadly force.

54. At all times during this incident, Plaintiff ARIEL ROMAN was unarmed and did not have a weapon.

55. At all times during this incident, Plaintiff ARIEL ROMAN was not threatening the officers or anyone else with great bodily harm.

56. Defendant BOGARD shot the Plaintiff, ARIEL ROMAN, in the back.

57. At the time of the shooting, Defendant BOGARD's use of deadly force was excessive and unreasonable.

58. The actions of the Defendant, P.O. MELVINA BOGARD, was intentional, willful, and wanton.

59. The actions of the Defendant, P.O. MELVINA BOGARD, were pursuant to the customs, policies, and practices of the Chicago Police Department.

60. The actions of the Defendant, P.O. MELVINA BOGARD, violated the Plaintiff, ARIEL ROMAN's constitutional rights as protected by 42 U.S.C. § 1983.

61. As a result of the actions of Defendant BOGARD, the Plaintiff suffered extreme pain and suffering, economic and non-economic losses, emotional distress, fear and loss of enjoyment of life, and permanent debilitating injuries.

**WHEREFORE**, the Plaintiff, ARIEL ROMAN, prays for judgement against the Defendant, P.O. MELVINA BOGARD, for reasonable compensatory damages, punitive damages, plus costs.

### COUNT IV – BATTERY - ILLINOIS LAW
### FIRST SHOT BY P.O. MELVINA BOGARD

1-61. Plaintiff hereby re-alleges and incorporates his allegations of paragraphs 1-61 of Count I as his respective allegations of paragraph 1-61 of Count IV as though fully set forth herein.

62. The actions of the Defendant, P.O. MELVINA BOGARD, constitute battery under Illinois Law.

63. As a result of the actions of the Defendant, P.O. MELVINA BOGARD, the Plaintiff suffered pain, suffering, monetary loss, emotional distress, fear and loss of enjoyment of his life and permanent debilitating injuries.

**WHEREFORE**, the Plaintiff, ARIEL ROMAN, prays for judgement against the Defendant, P.O. MELVINA BOGARD, for reasonable compensatory damages, punitive damages, plus costs.

### COUNT V – BATTERY – ILLINOIS LAW
### SECOND SHOT BY P.O. MELVINA BOGARD

1-63. Plaintiff hereby re-alleges and incorporates his allegations of paragraphs 1-63 of Count III as his respective allegations of paragraph 1-63 of Count V as though fully set forth herein.

64. The actions of the Defendant, P.O. MELVINA BOGARD, constitute battery under Illinois Law.

\    11

65. As a result of the actions of the Defendant, P.O. MELVINA BOGARD, the Plaintiff suffered extreme pain and suffering, economic and non-economic losses, emotional distress, fear and loss of enjoyment of life, and permanent debilitating injuries.

**WHEREFORE**, the Plaintiff, ARIEL ROMAN, prays for judgement against the Defendant, P.O. MELVINA BOGARD, for reasonable compensatory damages, punitive damages, plus costs.

### COUNT VI – INDEPMNIFICATION / CITY OF CHICAGO

1-65. The Plaintiff, ARIEL ROMAN, hereby re-alleges and incorporates his allegations of Paragraphs 1-65 of Counts I-V as his respective allegations of Paragraphs 1-65 of Count VI as though fully set forth herein.

66. Illinois law provides that public entities are directed to pay any compensator tort judgment for damages for which employees are liable within the scope of their employment activities.

67. All the Defendants are employees of the City of Chicago Police Department who acted within the scope of their employment in committing the misconduct described herein.

**WHEREFORE,** should Defendants be found liable for the acts alleged above, Defendants P.O. MELVINA BOGARD, P.O. BERNARD BUTLER, and THE CITY OF CHICAGO would be liable to pay the Plaintiff any judgment obtained against said Defendants.

### JURY DEMAND

The Plaintiff, ARIEL ROMAN, hereby requests a trial by jury.

> Respectfully submitted,
> ARIEL ROMAN
>
> /s/ Gregory E. Kulis
> One of His Attorneys

Gloria Schmidt
The Gloria Law Group
211 W. Wacker Dr.
Chicago, IL 60606
p. (312) 982-2974

Gregory E. Kulis
Gregory E. Kulis & Associates, Ltd.
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
p. (312) 580-1830

Andrew Martin Stroth
Action Injury Law Group, LLC
191 North Wacker Drive Suite 2300
Chicago, IL 60606-1638
p. (312) 735-4045

\ 13