**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL ROMAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 20 CV 01717 |
| | ) | |
| CITY OF CHICAGO, ET. AL. | ) | Judge LaShonda A. Hunt |
| | ) | |
| Defendants. | ) | Magistrate Judge Sunil R. Harjani |

**DEFENDANT BOGARD'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S AMENDED MOTION TO BAR EMANUEL KAPELSOHN**

Neither Plaintiff's original (now withdrawn) motion to bar Defendant's police policies expert, nor the amended version presently before this Court should have ever been filed. The original version was withdrawn after Defendant sent Plaintiff a letter pursuant to Fed. R. Civ. P. 11 pointing out Plaintiff's blatant false statements and baseless factual and legal theories. The "amended" version of this Motion is no less frivolous and improper than the original version. Indeed, while Plaintiff falsely states in the amended Motion that "Defendant Bogard…agrees that Plaintiff has ameliorated the issues raised by the Defendant [in the original motion]" (Dkt. 286 at fn. 1), the exact opposite is true. Bogard specifically advised Plaintiff of the continued deficiency of the amended motion and advised she opposed its filing as a result. This amended motion remains not only legally frivolous on its face, but its continued central assertion relies upon a blatant fabrication of the record in this case and baseless accusations of evidence tampering by Kapelsohn. This Motion must be denied.

**PROCEDURAL BACKGROUND AND PLAINTIFF'S REPEATED HISTORY OF MISREPRESENTATIONS IN HIS MOTIONS**

Plaintiff's original motion to bar Emanuel Kapelsohn ("Kapelsohn") relied almost entirely on a wild conspiracy theory where Kapelsohn (allegedly in concert with the Defendant Officers' attorneys) supposedly "influenced the substantive evidence of the case" by helping to concoct a theory of self-defense for Bogard and, with respect to Bogard's second firearm discharge in particular, concocting a theory that such shot was an unintentional discharge. Dkt. 269 at pp. 3-5. The glaring problem with this wild theory (in addition to having no evidentiary support whatsoever) is that Bogard was already "on the record" with this contention within days of the shooting, *before* this lawsuit was filed, and *years before* Kapelsohn was even retained in this case. And the worst part of all is that Plaintiff's attorney was aware of all of this before filing his motion to bar.

Upon review of Plaintiff's initial motion to bar, on January 19, 2024, Counsel for Bogard wrote to Plaintiff demanding Plaintiff withdraw the motion as the crux of Plaintiff's motion, that the "ex parte" scene walk through led to the fabrication of evidence, specifically that Bogard's second shot

1

was unintentional, was demonstrably false. Counsel Correspondence, at pp. 9-11, attached as Ex. 1. Bogard cited to her March 6, 2020 proffer, specifically highlighting that it was documented she told the CCSAO that the second shot was "an accidental discharge." *Id.* Defendant also pointed out that this document was produced to Plaintiff's counsel prior to the filing of this Motion. Thus, not only was Plaintiff's conspiracy theory about Kapelsohn fabricating evidence unsupported by evidence but this theory was directly contradicted by evidence that Plaintiff's attorney had at the time of filing.

On February 9, 2024, the final day of the Rule 11 21-day "safe harbor", Plaintiff's counsel responded, indicated that Plaintiff intended to file an amended motion, "removing the portions of the motion regarding your positions on Bogard & Kapelsohn in accordance with the CCSAO report." *Id.* at p. 8. Defense counsel requested a copy of the proposed motion to evaluate whether they would oppose Plaintiff's request. *Id.* at p. 7. Upon review, Bogard responded that the proposed amended motion does not fully address the Rule 11 concerns set forth in the original motion. *Id.* at p. 1; *see also* Comparison of Dkt. 273 and Dkt. 286, attached as Ex. 2. Indeed, Plaintiff continues to assert a wild conspiracy theory where Kapelsohn (allegedly in concert with the Defendant Officers' attorneys) supposedly by "crafted" evidence in this case by concocting a theory of self-defense for Bogard and, with respect to Bogard's second firearm discharge, and fabricating a theory that such shot was an unintentional discharge. Dkt. 286 at pp. 3-5.

In particular, Plaintiff still continually insinuates that Kapelsohn somehow tampered with or influenced the testimony in this case in manner that "compromise[d] the integrity of the legal process," "produced opinions and testimony [that]…influenc[ed] the legal process," and otherwise acted in a manner which "rais[es] concerns about the integrity of the evidence and testimony" in this case. *Id.* at p. 3 ("On December 11, 2022, Kapelsohn visited the scene accompanied by Bogard and Butler, along with Defendant's counsel. However, this meeting, conducted ex parte with the Defendants, fails to meet the standards of impartiality and credibility, *influencing the legal process and the case*."); *id.* at pp. 3-4

2

("During this meeting, the 5th Amendment concerns Bogard had at her first deposition and her criminal trial took a backseat *to ensure that she, Defendant Butler, and Mr. Kapelsohn could solidify her defense strategy in her civil case.*"); *id.* at p. 4 ("[I]n secret and away from the possibility of cross-examination, Bogard was all too ready to speak with her co-defendant and Mr. Kapelsohn on a crowded CTA train platform *as they crafted their defense in this case.*"); *id.* at p. 4 ("The aforementioned expert to defendant correspondence *constitutes inappropriate conduct that compromises the integrity of the legal process…*"); *id.* at p. 4 ("Kapelsohn engaged in improper direct ex parte contact with the Defendants. He communicated directly with the Defendants ex parte without proper supervision, *raising concerns about the integrity of the evidence and testimony.*"); *id.* at p. 7 ("His methods of *producing opinions and testimony…influence the legal process in a manner that is not helpful as to mislead the jury.*")(emphasis added). In other words, Plaintiff appears to not too subtly accuse Kapelsohn of creating evidence or tampering with the integrity of existing evidence in this case as opposed to merely opining on same. *Id.*

There is zero evidence cited by Plaintiff to support such salacious allegations. The bigger problem for Plaintiff, again, is that Bogard's position that the second shot was unintentional and other details of her factual positions (which still appear to be the "evidence" Plaintiff claims was influenced by Kapelsohn) were matters of record long before Kapelsohn ever met Bogard. In fact, the record of this position by Bogard pre-dated the filing of this lawsuit. And Plaintiff knew (or should have known) this well before recklessly filing both this Motion and its prior iteration, because Bogard's position on this matter was documented by materials produced in discovery by the Cook County State's Attorneys' Office ("CCSAO"), specifically, documentation of a proffered statement by Bogard made on March 6, 2020, mere days after the incident in this case and before the above-captioned lawsuit was even filed on March 11, 2020. CCSAO Report of Proffer, attached as Ex. 3 at p. 4.

While the above collection of highly irresponsible conduct is troubling in its own right, Plaintiff's assertions that Kapelsohn's conduct in speaking to Bogard and visiting the scene of the

3

incident with her to assist in understanding the factual predicate for his opinions is a basis to bar his testimony under *Daubert* is borderline ludicrous. Plaintiff cites no authority supporting his accusations of impropriety by Kapelsohn in meeting with Bogard and visiting the scene and none exists. The law is, in fact, the opposite of what Plaintiff suggests. Witness interviews and scene visits are not only a commonplace procedure to ensure an accurate understanding of the facts supporting an opinion but, indeed, this is something that all experts should aspire to do under like circumstances to make sure they get the factual assumptions correct that undergird their opinions.

Finally, Plaintiff's claims that Bogard "failed to disclose" under Fed. R. Civ. P. 26(a)(2)(B) that Kapelsohn conducted a scene visit "walk through" with Bogard is similarly a blatant (and, frankly, rather clumsy) fabrication. Kapelsohn explicitly disclosed this on the second page of his Report along with the other materials he was relying on as the factual predicate for his opinions. And Bogard herself had no obligation whatsoever to disclose any communications at any time prior to that. Plaintiff did not issue any interrogatories which could have required the Defendant Officers to disclose the information prior to that date. Nor did Plaintiff ask Bogard any question at her second deposition to which this information would have been responsive.

## RELEVANT FACTUAL BACKGROUND

The incident in this case occurred on February 28, 2020, when Plaintiff decided to engage in a prolonged and violent physical attack on two uniformed police officers, Defendants Bogard and Butler, in the CTA Grand Station and was shot twice by Bogard. Plaintiff filed his lawsuit less than a month later. In asserting two separate counts for both Excessive Force and state law battery, Plaintiff treats the two shots as separate and distinct uses of force. *See* Dkt. 1.

Following the incident, the CCSAO initiated an investigation to evaluate whether and to what extent it would initiate prosecution against the Defendant Officers for their actions on February 28, 2020. *See* Dkt. 38. On March 6, 2020, Bogard provided a proffered statement to the CCSAO. Ex. 3.

4

During the proffer, when asked about the second shot, Bogard stated that "it was 'an accidental discharge.' Defendant Bogard could not recall if she had her finger on the trigger, but was adamant that she never pointed her gun or raised it to aim and shoot at Roman." Ex. 3 at p. 4. The CCSAO charged Bogard with aggravated battery with a firearm and official misconduct, but only with respect to the first shot. Dkt. 70 at p. 2, 70-2 at p. 8:11-14. The CCSAO declined to charge Bogard with any criminal conduct related to the second shot. *Id.*

Due to the threat of criminal prosecution, this Court initially stayed Defendant Officers' obligation to answer Plaintiff's Complaint and respond to discovery. Dkt. 52; Dkt. 79. In April 2022, the Court entered an order lifting the partial stay, requiring the individual Defendants to answer Plaintiff's complaint and proceed with the previously stayed discovery. Dkt. 90. Following this, Butler filed his answer, substantively responding to Plaintiff's allegations. Dkt. 91. Bogard filed an answer, asserting her Fifth Amendment privilege in response to all allegations. Dkt. 105.

On June 16, 2022, Bogard sat for her first deposition in which she asserted her Fifth Amendment privilege in response to almost every question. Bogard Deposition 1, attached as Ex. 5. In that deposition, Plaintiff asked whether Bogard intentionally pulled the trigger with respect to both the first and second shots. *Id.* at pp. 17:23-18:1, 18:7-8; 27:13-28:8.

On June 20, 2022, Plaintiff issued Requests to Admit to Bogard. The Requests specifically asked her to admit or deny: "The first time you shot Ariel Roman, you intentionally shot him." Bogard's Answers to Requests To Admit, attached as Ex. 6 at ¶1. Due to the pendency of the criminal trial, Bogard's initial responses asserted her Fifth Amendment privilege. *Id.*

The prosecution of Bogard proceeded to trial in September of 2022. On November 22, 2022, Bogard was found not guilty on both counts. November 22, 2022 Transcript, attached as Ex. 7 at p. 10:9-11. Immediately following her acquittal, Bogard notified Plaintiff of her intention to retract her previous assertion of her Fifth Amendment Rights. Bogard sought to amend her answer, provide

amended discovery answers as appropriate, and made herself available to be re-deposed. *See* November 22, 2022 Correspondence, attached as Ex. 8; Dkt. 195; Bogard's Amended Answers to Requests to Admit, attached as Ex. 9. Also, the City issued a record subpoena to the CCSAO for all records related to the February 28, 2020 incident. City Subpoena, attached as Ex. 10.

Bogard filed her amended answer. Dkt. 195. In answering allegations related to the first shot she admitted only "that she drew her weapon and shot Plaintiff." *Id.* at ¶29. In comparison, in answering allegations related to the second shot, Bogard answered that "Defendant Bogard's gun fired a second shot." *Id.* at ¶56. Bogard's second deposition proceeded on February 6, 2023, in which she substantively responded to Plaintiff's questions. Ex. 2.

Simultaneous with the resolution of the criminal prosecution, the parties were proceeding through expert discovery. Initially, an expert discovery schedule was entered requiring Plaintiff to disclose liability experts by September 2, 2022, this was extended on Plaintiff's unopposed motion with Plaintiff's disclosures by September 23, 2022 and Defendants' disclosures to December 21, 2022. Dkt. 149. Plaintiff disclosed his police practices expert: William Harmening.[1]

In July 2022, Bogard retained a police practices expert, Kapelsohn. *See* Kapelsohn Invoice, attached as Ex. 9. Kapelsohn requested to view the inventoried evidence at the Chicago Department's Evidence and Recovered Property Section ("ERPS"). Dkt. 175 at ¶8. On December 6, 2022, Defendants notified Plaintiff that Defendants intended to view the inventoried evidence at ERPS with their expert on December 12, 2022. *Id.* at ¶9. Plaintiff did not oppose this request or attend the viewing. While viewing evidence on December 12, 2022, previously undiscovered suspect narcotics were found in Plaintiff's belongings. *Id.* at ¶10. Plaintiff was notified of this that same day. *Id.* at ¶11.

---

[1] While Defendants' dispute the admissibility of William Harmening's opinions, as Plaintiff did not file an affirmative motion for summary judgment in reliance of Harmening's testimony or opinions, Defendants have not filed such challenges at this time out of respect for judicial efficiency. Should any of Plaintiff's claims survive Defendants' Motions for Summary Judgment, Defendants intend to file such a motion in anticipation of trial.

Defendants requested an extension for their expert disclosure so the newly discovered evidence could be properly inventoried and tested to identify the suspect narcotics. *Id.* at ¶12. Good cause was found and Defendants' motion for extension was granted. Dkt. 175; Dkt. 184.

Defendants disclosed Kapelsohn on February 20, 2023. Kapelsohn Report, attached as Ex. 12. Plaintiff issued a subpoena to Kapelsohn for production of records, including correspondence. In advance of Kapelsohn's deposition, 536 pages of records were provided in response, including correspondence and invoices related to the scene walk through on December 2022. December 8. 2022 Correspondence, attached as Ex. 13; Ex. 11. In March 2023, the CCSAO responded to the City's record subpoena. Its production included the CCSAO's report of Bogard's March 6, 2020 proffer. Ex. 3. Kapelsohn was deposed on May 9, 2023. Kapelsohn's Deposition, attached as Ex. 14.

## ARGUMENT

Bogard provides the above history of both motion practice and discovery in this case to make clear that Plaintiff's accusation that Kapelsohn has influenced or tampered with the evidence in this case is both utterly baseless and explicitly debunked by the records in this case which Plaintiff was in possession of before filing this motion containing this recklessly false conspiracy theory. Beyond these baseless allegations, Plaintiff has set forth no valid legal basis to exclude Kapelsohn.

### I.     **Plaintiff Fails To Assert A Valid Basis To Exclude Kapelsohn Under *Daubert.***

Setting aside the baseless nature of Plaintiff's accusations of evidence tampering, Plaintiff's Motion to Bar Kapelsohn's testimony under *Daubert* fails to set forth any viable legal argument. Specifically, Plaintiff outlines only two challenges: (1) Kapelsohn's perceived bias due to the number of cases where he has testified in cases for police officers and; (2) Kapelsohn's methodology in "meeting with Defendant police officer ex parte" was improper. Dkt. 286. Where Plaintiff does not raise the objection, this Court need not assess Kapelsohn's qualifications for his opinions, or the reliability of his methodology. *See Paine ex. rel Eilman v. Johnson*, 2010 WL 785398, *3 (N.D. Ill Feb. 26,

2020)(citing *United States v. Moore*, 521 F.3d 681, 685 (7th Cir. 2008)("A judge is not obliged to look into the questions posed by Rule 702 when neither side either requests or assists.").

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's Opinion in *Daubert*." *Cazares v. Frugoli*, 2017 WL 1196978, at *3 (N.D. Ill. March 31, 2017). Rule 702 charges trial judges with the responsibility of acting as "gatekeeper[s] with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Milhailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004)(citing *Kuhmo Tire Co. v. Carmichael*, 562 U.S. 137, 147 (1999)).

### A. Kapelsohn's Alleged Bias Is Not A Basis To Bar His Testimony.

Plaintiff's own motion concedes that an expert witness's perceived bias is not enough to bar an expert. Dkt. 286 at p. 6. If it was, his own expert would fall victim to the same analysis as a basis to bar, as Harmening testified that when testifying as an expert in civil cases, he testifies "almost always" on behalf of the Plaintiff or "almost 100-percent plaintiffs." Harmening Deposition, attached as Ex. 15 at p. 77:9-20. While Defendants intend to challenge the viability of Harmening's opinions on other grounds, Defendants recognize that case law makes clear, this line of inquiry goes to the weight, not the admissibility, of an expert's opinions. Thus, with respect to Kapelsohn, Plaintiff has certainly failed to present a record of such an extraordinary bias to outweigh his own expert's almost exclusive one-sided representation. Consequently, Plaintiff's allegation of perceived bias is not remotely a valid basis to exclude Kapelsohn under *Daubert*.

"[I]t is well-established that an expert's bias is not a proper basis to bar testimony under *Daubert*." *Cage v. City of Chic.*, 979 F. Supp. 2d 787, 827 (N.D. Ill. 2013)("Determining the credibility of a witness is the jury's province, whether the witness is lay or expert, and an expert witness's bias goes to the weight, not the admissibility of the testimony, and should be brought out on cross-examination."); *In re Unisys Savings Plan Litig.*, 173 F.3d 145, 166, n. 11 (3d Cir. 1999)("Courts have

8

held in numerous other cases that credibility is irrelevant to determining whether a proposed expert witness's testimony is admissible under Rule 702, and particularly whether it is based on reliable methodology .... For example, expert witnesses cannot be excluded on the basis of bias."); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994)("[E]valuating the reliability of scientific methodologies and data does not generally involve assessing the *truthfulness* of the expert witnesses.")(emphasis in original); *see also Baldwin Graphic Sys., Inc. v. Siebert, Inc.,* 2005 WL 4034698, *3 n. 3 (N.D. Ill. 2005)("[A]lleged bias is fodder for cross-examination and impeachment, not a ground for exclusion."); Charles A. Wright & Victor J. Gold, 29 Fed. Prac. & Proc. Evid. § 6265 ("[T]he courts may not consider credibility questions such as bias when exercising their discretion as to whether a witness qualifies as an expert."). In fact, the Illinois state court authority cited by Plaintiff does not call for the exclusion of an expert on this basis either. *See Pontiak Nat'l Bank v. Vales*, 2013 IL App (4th) 111088, ¶¶17, 19 (testimony was not improper where an expert had a perceived bias, but trial court failed to properly curtail cross-examination into that issue, explaining that "the bias or financial interests of each party's experts can be adequately explored and exposed, without undue harassment or unnecessary invasion of privacy, if each party is permitted to question its opponents' experts about their annual earnings from expert services for the two-year period preceding the new trial date."). Thus, exploration of such alleged bias is fodder for cross-examination, not a basis for exclusion.

### B. Kapelsohn's Methodology Is Entirely Proper Under Rule 702.

The Seventh Circuit has developed a three-step admissibility analysis for expert testimony. *Paine ex rel. Eilman*, 2010 WL 785398, at *1. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (quoting *Ervin*, 492 F.3d at 904 (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592-93 (1993))). Finally, the expert's testimony must be relevant, meaning

9

that it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting *Ervin*, 492 F.3d at 904). Here, Plaintiff does not challenge Kapelsohn's qualifications to offer opinions on law enforcement procedures or that the opinions themselves would assist the trier of fact. *See* Dkt. 286. As such, this Court need not evaluate either the first or third prongs of this analysis. *See id.* Instead, Plaintiff asserts a single challenge to Kapelsohn's methodology. *See id.*

Plaintiff argues, without citation to any authority, that because Kapelsohn engaged in an "ex parte" meeting with Defendants Bogard and Butler "without proper supervision," his methodology was improper as he had "unfettered access to Defendants." *Id.* at pp. 3-4. Kapelsohn's methodology in meeting with witnesses to the incident at the scene to complete a "walk through" before rendering his opinions about the incident is not a basis to bar Kapelsohn's opinions as an expert under Rule 702 nor was it even inappropriate in the first place. There is nothing to suggest that his methodology in evaluating the conduct of the Officers and providing opinions regarding their conduct was insufficient or improper. In fact, Kapelsohn's diligence in seeking out a detailed understanding of the facts of this case beyond simply reviewing reports and depositions and videos is not only proper but actually enhances the reliability of his opinions.

Expert testimony must "be the product of reliable principles and methods." *United States v. Conn.*, 297 F.3d 548, 555 (7th Cir. 2002). "The measure of intellectual rigor," however, "will vary by the field of expertise." *Id.* at 556. A court may focus "on personal knowledge or experiences" of the expert in assessing reliability of methodology. *See Wells v. City of Chic.*, 2012 WL 116040, at *9 (N.D. Ill. 2012)(quoting *United States v. Brumley*, 217 F.3d 905, 911 (7th Cir. 2000); *see Kumo Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). It is sufficiently reliable methodology for a police practices expert, like Kapelsohn, to apply their training, knowledge, and experience to assess whether police officers' actions were consistent with accepted standard and practices. *See Jimenez v. City of Chic.*, 732 F.3d 710, 721 (7th Cir. 2013); *Estate of DiPiazza v. City of Madison*, 2017 WL 1843316, at * 3 (E.D. Wisc. 2017);

10

*Estate of Robinson ex. rel. Irwin v. City of Madison*, 2017 WL 562482, at \*10 (E.D. Wisc. 2017)(methodology sufficiently reliable where expert "develops an understanding of the facts of a case, analyzes the officer's actions, compares that officer's actions to standard practices and training, and explains consistencies and/or inconsistencies between what the officer did and what applicable practices required or recommended."); *Cazares*, 2017 WL 1196978, at \*11 (police practice expert's methodology reliable where opinions "grounded in his significant personal experience and knowledge as well as from his review of the materials related to this case."); *Wells*, 2012 WL 116040, at \*9.

Plaintiff has cited no authority supporting his proposition that an expert witness is precluded from interviewing witnesses as a basis for his opinions. *See* Dkt. 286. Plaintiff cites no authority to support his contention that an expert is not authorized to speak to the party who retained him before rendering his opinions. *See id.* Nor does Plaintiff cite any authority to suggest that the interview of witnesses must be in the presence of opposing counsel, transcribed, or otherwise "supervised." *See id.* In fact, while Plaintiff admits that he is unable to find case authority to support his position, he entirely ignores case law that expressly holds that "it is not uncommon for experts to rely on interviews" to support their opinions. *Williams v. Illinois*, 567 U.S. 50, 109 (2012)(Thomas, J., concurring); *see also Arista Records LLC v. Usenet.com*, 608 F. Supp. 2d 409, 424 (S.D. N.Y. 2009) ("In forming their opinions, experts, of course, often rely on interviews of people with knowledge of relevant facts.").[2]

There is ample case authority in which Courts have addressed expert witnesses conducting interviews in preparation for the rendering of the expert's opinions without any hesitation or concern that the very process of an expert interviewing a witness without supervision would somehow

---

[2] Plaintiff's counsel questioned Kapelsohn at length at his deposition about the walk through and his recollection of his conversations with the Defendant Officers. As an example, when asked about any questions directed to Bogard at the walk through about the first shot, Kapelsohn testified he recalled asking Bogard "how far the plaintiff was from her when she fired the shot. And we actually kind of – I had her stand there, and I stood there and we got an approximate distance. And I think may have even measured it with a tape measure. And I have it in my report, you know, that he was x number of feet approximately from her when she fired." Ex. 14 at pp. 30-31.

compromise the credibility of evidence in the case as Plaintiff avers. For example, in *Rep. Services of Ind. Ltd Partnership v. Coe Heating & Air Conditioning, Inc.*, 2023 WL 6307090, *2 (N.D. Ind. 2023) the Court denied a party's *Daubert* challenge seeking to bar the admissibility of an expert witness regarding the probable origin and cause of the fire at issue in that case. In evaluating the admissibility of the expert's opinions, the Court expressly found that the expert's "conclusions flowed from an immense amount of data" including conducting "multiple interviews." *Id.* at *5. "These interviews included the statements of those who personally observed the fire and those with personal knowledge of the conditions and operations of Building 1 before the fire." *Id.* The Court, in allowing the testimony of the expert, took no issue and raised no concern with the fact that an expert, in preparing his opinions, interviewed witnesses about information related to the incident. In fact, the Court lauded the breadth of information relied upon by the expert in reaching his opinions, specifically citing the witness interviews, as an appropriate methodology in reaching the opinions. *Id.; see also Salazar v. Ryan*, 2017 WL 2633522 (D. Ariz. 2017)(evaluating the discoverability of the petitioner's experts witness interview notes without discussion or consideration of the fact that expert had conducted witness interviews in reaching his conclusions was improper); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2023 WL 2711417 (S.D. NY. 2023)(denying *Daubert* motion which argued expert's methodology is unreliable because he relied on witness interviews because it went to the weight not the admissibility of the argument, and thus the proffered testimony was "sufficiently reliable to withstand *Daubert* scrutiny.")

Accordingly, Plaintiff has provided no viable argument that Kapelsohn's methodology in interviewing Defendant Officers while conducting a walk through was an impermissible or unreliable methodology. This Court should deny Plaintiff's Motion to bar Rule 702.

## II.     **Kapelsohn Cannot Be Barred Under Rules 26 and 37.**

Plaintiff's arguments that Kapelsohn should be barred under Rules 26 and 37 similarly fails. The crux of Plaintiff's position is not that Kapelsohn conducted this "ex parte" interview of

Defendant Officers, but that in doing so, allegedly met "in secret and away from the possibility of cross-examination" to "craft" Bogard's defense and that this meeting was not properly or timely disclosed. Dkt. 286 at p. 4. Plaintiff's position should be rejected by this Court as it is a demonstrably false conspiracy theory and, separately, legally baseless in its entirety.

Not only does Plaintiff have no evidence to support that the walk through or interview influenced evidence in this case or prejudiced Plaintiff in any way, Bogard's March 6, 2020 proffered statement to the CCSAO establishes that Plaintiff's theory is entirely false. *See* Ex. 3.

Plaintiff attempts to claim that he was entirely unaware that Bogard would testify that the second shot was unintentional until her second deposition, dramatically claiming that to say he was "shocked [. . .] would be putting it mildly." Dkt. 286 at p. 5. This assertion cannot be made in good faith. Again, within days of this incident, Bogard gave a proffered statement to this effect. While the production of the proffered statement was delayed until after the completion of the criminal case and the CCSAO's compliance with the record subpoena, Plaintiff was aware that following Bogard's proffered statement, the CCSAO chose to criminally charge only with respect to the first shot.

It is also notable that after Bogard proffered and Plaintiff filed his Complaint, he specifically decided to delineate the shots as separate counts in his pleadings for each of the two shots. This highlights that Plaintiff was at least suspicious, if not fully aware of this factual intricacy with regard to the different intention as to each shot. *Compare* Dkt. 1; with *Medina v. City of Chic., et. al.*, 22 cv 5043, Dkt. 1 (complaint filed by the same undersigned counsel, where the plaintiff alleges that he was shot multiple times by police officers, but only asserts a single claim of excessive force for the multiple shots, as well as a single battery claims). Additionally, the questions Plaintiff asked in his Requests to Admit and initial deposition of Bogard further belies his insistence that he was unaware that Bogard would testify that the second shot was unintentional.

But even if Plaintiff was unaware that she would testify that the second shot was unintentional, his insinuation that the testimony was somehow concocted during a scene walk through with Kapelsohn is an egregiously false allegation that is directly contradicted by her proffered statement, made more than two and a half years before the "walk through" which Plaintiff finds to be so objectionable. Plaintiff's motion entirely ignores this evidence in suggesting foul play by Defendants.

### A. Bogard Was Under No Duty To Disclose The Walk Through Before The Expert Disclosure.

As an initial matter, Plaintiff falsely claims that the disclosure of the walk through with Kapelsohn and the Officers, first occurred during Kapelsohn's deposition. Dkt. 286 at p. 8. This is obviously false as there is an entire paragraph dedicated to the disclosure of this meeting as part of the information reviewed in preparation of his report. Ex. 12 at p. 2. Further, in response to a record subpoena, correspondence and invoices were disclosed that referenced the meeting more than a month before his deposition proceeded. Ex. 11; Ex. 13.

Setting aside that there is nothing to support Plaintiff's theory that the "walk through" was the source of Bogard's testimony that the second shot was accidental, Defendants' disclosure of that walk through was timely and appropriate. *See* Ex. 12 p. 2. As that walk through was part of the basis for Kapelsohn's opinions, it was disclosed in his report as required by Rule 26, on the date ordered by the Court. Any alleged failure to disclose the meeting before that time was not a violation of any obligation under Rule 26. Therefore, the timing of that disclosure is not a basis to bar Kapelsohn's testimony.

Plaintiff points to no obligation on this record which would have required either Defendant Butler or Bogard to disclose the December 2022 scene visit before the expert disclosure deadline. *See* Dkt. 286. Plaintiff did not issue any interrogatories which could have required the Defendant Officers to disclose the information prior to that date. Nor did Plaintiff ask Bogard any question at her second deposition to which this information would have been responsive. *See* Ex. 4. He could have, but did

not, ask her if she had returned to the scene. *See id.* He could have, but did not, ask her what she stated in her proffered statement to the CCSAO. *See id.* He could have, but did not, pursue discovery from the CCSAO regarding Bogard's statements. Instead, he pushed for the stay to be lifted and discovery to proceed during the pendency of the criminal prosecution. Plaintiff's Motion should be denied.

### B.  Rule 37 Sanctions Are Not Warranted As There Was No Prejudice.

Finally, this Court should deny Plaintiff's motion as there was no perceived harm caused by the February 20, 2023 disclosure of the walk through. Plaintiff's argument of harm stems from his assertion that the delayed disclosure somehow allowed Defendants to conspire and fabricate evidence related to the second shot, through a coordinated effort between Defendants and Kapelsohn undertaken in December 2022. Plaintiff goes so far as to suggest that Defendants sought to delay Kapelsohn's disclosure to ensure that Bogard testified first, rather than for what it actually was, that additional suspect narcotics were found to be in his client's possession, potentially affecting the scope of Defendants' experts' opinions. Dkt. 286 at p. 9; Dkt. 175. What Plaintiff's motion is entirely silent about however, is that Bogard's testimony about what occurred on February 28, 2020 has remained completely consistent, when she proffered in March 2020 and when she testified substantively in this case. *Compare* Ex. 3, *with* Ex. 4. Thus, it is entirely impossible for Kapelsohn to somehow influence Bogard to testify in this manner, when the supposedly improper meeting occurred more than two and a half years after she provided her proffer about this incident, before this lawsuit was even filed.

Plaintiff also misrepresents the deposition testimony regarding that walk through in attempt to assert harm. While Kapelsohn could not remember the specific questions asked during a walk through that had occurred five months prior, he specifically recalled that Bogard told him that the second shot was not intentional: a statement that is entirely consistent with Bogard's 2020 proffer, amended answer, and deposition testimony. Ex. 14 at pp. 22:13-40:4, 42:21-43:13, 57:4-14, 59:23-60:21, 63:4-23. There is absolutely no harm or prejudice to support relief under Rule 37.

## CONCLUSION

WHEREFORE, Defendant Bogard seeks an order from this Court denying Plaintiff's Motion to Bar Expert Witness, Emanuel Kapelsohn Pursuant to *Daubert* and Rules 26 and Rule 37, and any other relief this Court deems to be proper.

Borkan & Scahill, Ltd.
20 S. Clark Street, Suite 1700
Chicago, Illinois 60603
312-580-1030

Counsel for Defendant Melvina Bogard

Respectfully submitted,
By: s/ Whitney N. Hutchinson
      Whitney N. Hutchinson

Special Assistants Corporation Counsel

16