**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARIEL ROMAN,<br><br>Plaintiff,<br><br>v.<br><br>MELVINA BOGARD and BERNARD BUTLER, each in his or her individual capacity, and the CITY OF CHICAGO,<br><br>Defendants. | Case No. 20 C 1717<br><br>Hon. LaShonda A. Hunt |

**ORDER DENYING SUMMARY JUDGMENT**

Plaintiff Ariel Roman filed this action against Chicago Police Officer Melvina Bogard asserting two counts of excessive force under 42 U.S.C. § 1983 (Counts I and III) and two counts of state law battery (Counts IV and V) after Officer Bogard shot Plaintiff twice. (Compl. at ¶¶ 18-44, 52-65, Dkt. 1). Plaintiff also sued Chicago Police Officer Bernard Butler for failure to intervene/provocation (Count II) and the City of Chicago for indemnification (Count V). (*Id.* at ¶¶ 45-51, 66-67). Both Bogard and Butler (collectively, "Defendants") have moved for summary judgment. (Officer Bogard's Mot. for Summ. J., Dkt. 270; Def. Officer Butler's Mot. for Summ. J., Dkts. 263, 278).[1] Furthermore, the Court granted the City's motion to join Defendants' summary judgment motions as to indemnification. (Dkt. 277). For the reasons discussed below, the motions for summary judgment are denied.

[1] For brevity, the Court refers to Defendant Bogard's motion for summary judgment (which includes her memorandum in support therein) as "Dkt. 270" and Defendant Butler's memorandum of law in support of his motion for summary judgment as "Dkt. 278."

## STATEMENT

The salient facts are mostly undisputed. On February 28, 2020, following a near five-minute physical altercation between Plaintiff, Bogard, and Butler at a CTA station, Bogard shot Plaintiff twice—once in the escalator vestibule of the station and again as Plaintiff ran up the escalator away from Defendants. However, the parties offer differing interpretations of what the facts mean. Contrary to Bogard's contention that "this Court would be hard pressed to find an excessive force case more appropriate for disposition prior to trial" (Dkt. 270 at 9)[2], the record reflects a plethora of genuine disputes over material facts which must be resolved by a factfinder at trial.

### I. Defendants' Position

According to Defendants, what should have been a routine stop of Plaintiff to issue him a ticket for committing the relatively minor municipal ordinance violation of crossing between CTA train cars turned into a fight for their lives when Plaintiff, a man who was larger than both Defendants, physically and violently resisted arrest for nearly five minutes. Thanks to CTA surveillance video and a bystander who recorded most of the incident, much of their altercation is recorded. These videos, Defendants argue, show Plaintiff attempting to pull and push Defendants in the direction of empty train tracks and resisting Defendants' verbal and physical efforts to subdue him, the latter of which included attempting to handcuff him, shooting him twice with a taser, and pepper spraying him in his face. Ultimately, Defendants claim, Plaintiff refused to surrender and left Bogard with no choice but to fire her weapon to protect herself and others in the rush hour train station crowd from Plaintiff, who was in possession of an un-searched jacket that

[2] Unless otherwise noted, page numbers in citations are the page number on the CM/ECF header of the filing, not the page number at the bottom of the page.

could have contained a weapon. And while Butler is heard on the video saying "shoot him" prior to Bogard's first shot, Butler contends that he was referring not to the gun, but to Bogard's pepper spray which she had previously used on Plaintiff. Butler further contends that he did not see Bogard with her gun prior to her firing the first shot. Plaintiff fled up the escalator after being shot to avoid being detained. Bogard contends that as she chased Plaintiff up the escalator, she unintentionally fired a second shot which hit Plaintiff in the buttocks. All parties agree that this second shot was one of the brief moments of the altercation which was not caught on camera.

Bogard argues that she is entitled to summary judgment on Plaintiff's excessive force claims because both shots she fired were objectively reasonable. (Dkt. 270 at 15-25). Namely, she argues there was "reasonable concern" Plaintiff may have had access to a weapon and that Plaintiff may have physically harmed Bogard or innocent bystanders. (*Id.* at 19-25). Further, Bogard contends that, as to the second shot (Count III), summary judgment is proper because Plaintiff was not seized, and Bogard did not intend to shoot Plaintiff. (*Id.* at 25-28). But regardless, even if the shots were not objectively reasonable, Bogard maintains she is entitled to qualified immunity. (*Id.* at 29-31). And finally, Bogard asserts, summary judgment is proper on Plaintiff's state law claims because both shots were legally justified under Illinois law, the second shot was accidental and a battery claim requires intentional action, and she is entitled to immunity under the Tort Immunity Act. (*Id.* at 31-33).

Butler argues that he is entitled to summary judgment because Bogard did not violate Plaintiff's constitutional rights (thus precluding a finding that he failed to intervene). (Dkt. 278 at 12-13). But even assuming a constitutional violation occurred, Butler contends, he is still entitled to summary judgment because there is no evidence that he had a realistic opportunity to intervene,

he is entitled to qualified immunity, and failure to intervene claims have no basis in the Constitution. (*Id.* at 12-21).

## II. Plaintiff's Position

To no surprise, Plaintiff paints a very different picture of the incident. He contends that after crossing between CTA cars, he was informed by Defendants that doing so was illegal and asked to step off the train. Plaintiff claims that when he went to retrieve his ID from his backpack to give it to Defendants, Butler grabbed his arm. Far from attempting to push or pull Defendants onto the tracks, Plaintiff was trying only to free himself from Butler's grip. In the ensuing five minute struggle, Plaintiff ignored verbal commands but did not display any violence towards Defendants. He merely did not want to be handcuffed, telling Defendants at one point that he didn't do anything to them. Plaintiff continually tried to pick up his jacket, he says, because it was being stepped on and was causing Plaintiff to slip as he tried to stand up.

When he was able to get back on his feet, Plaintiff picked up his jacket, rubbed his eyes after being pepper sprayed, and took a few steps forward. He argues he posed no threat to either Defendants or the public when Bogard fired her weapon. Following the first shot, Plaintiff contends that he feared for his life and ran up the escalator to avoid being killed. Contrary to being a violent fleeing felon, Plaintiff says he was nothing more than an unarmed, nonviolent man trying to save his own life.

According to Plaintiff, the facts clearly demonstrate that neither Defendant is entitled to summary judgment. Namely, Plaintiff argues that neither shot fired by Bogard was objectively reasonable, and the second shot was not accidental (Dkt. 290 at 7-23), Bogard's state law claims fail for those same reasons (*id.* at 23-24), and Bogard is not entitled to qualified immunity. (*Id.* at 24-29). And because Bogard violated his constitutional rights, Butler is thus not entitled to

summary judgment on his failure to intervene/provocation claim. (Dkt. 288 at 9). Alternatively, Plaintiff argues that Butler had a realistic opportunity to intervene (*id.* at 10-14), Butler is not entitled to qualified immunity (*id.* at 14-17), and he did indeed provoke the first shooting. (*Id.* at 18-19).

## III. Applicable Law

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, the Court must resolve all disputes and draw all reasonable inferences in favor of the non-movant. *Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016). However, when event(s) are recorded on video, the Court "may consider [the] video footage without favoring the nonmovant" when the video footage "clearly contradicts the nonmovant's claims[.]" *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018). "When video footage firmly settles a factual issue, there is no genuine dispute about it, and [the Court] will not indulge stories clearly contradicted by the footage." *Id. See also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stores, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). But sometimes, videos do *not* firmly settle factual issues and instead leave room for varying interpretations. In such cases, disputed facts remain. *See, e.g.*, *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019).

**B. Excessive Force**

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 388 (1989). The Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Determining whether the force used was "objectively reasonable" requires balancing the interests of both the individual and the government. *Id.* "Factors relevant to the reasonableness inquiry include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Graham*, 490 U.S. at 396)).

Application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case[.]" *Graham*, 490 U.S. at 396. The analysis requires consideration of the totality of the circumstances and the information the officer knew at the time the force was applied. *Horton*, 883 F.3d at 949-50. The Court must be vigilant to avoid viewing the facts "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Instead, it must consider the point of view of a reasonable officer on the scene, and the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

**C. Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The two prongs of a qualified immunity analysis—whether a federal statutory or constitutional right was violated and whether that right was clearly established at the time—need not be analyzed in order. *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021).

A defendant is entitled to summary judgment on qualified immunity grounds if she did not violate a federal statutory or constitutional right *or* the right was not clearly established at the time. *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014). Nevertheless, the existence of a dispute of material fact precludes summary judgment on the issue of whether either Defendant is entitled to qualified immunity. *See Gupta*, 19 F.4th at 1000 (finding summary judgment was inappropriate due to disputes of material fact and "[f]or [that] same reason, it [was] impossible to conclude on summary judgment whether [defendant] was entitled to qualified immunity" because "[t]he evaluation of qualified immunity . . . require[d] the same assessment of the material fact at issue in this case on the substantive claim of excessive force."); *Weinmann v. McClone*, 787 F.3d 444, 451 (7th Cir. 2015) (affirming denial of defendant officer's motion for summary judgment based on qualified immunity because "[t]he existence of a factual dispute about the circumstances

surrounding [the defendant police officer's] decision to fire on [the plaintiff] precludes a ruling on qualified immunity at this point.").

## IV. Analysis

The Court has conducted an in-depth review of the video evidence (Dkts. 312-325), the parties' respective statements of material facts and responses (Dkts. 289, 304), the briefs, and the relevant legal authority. After doing so, the Court concludes that Plaintiff and Defendants have each offered a reasonable interpretation of the events at issue, and the video is far from conclusive. On one hand, a reasonable jury may view the evidence as portraying a violent man, larger than Defendants, who is physically resisting arrest for nearly five minutes in close proximity to potentially deadly train tracks. Having not yet ruled out that Plaintiff may be armed and dangerous, a jury may determine that Bogard had no choice but to fire her weapon after Plaintiff ignored verbal commands and resisted handcuffing, tasing, and pepper spray. Finally, they may agree that Plaintiff presented a danger to Defendants and the public at large when he grabbed his jacket and fled up the escalator and Bogard's second shot during the chase was unintentional. Likewise, a reasonable jury may further find that Butler really did intend that Bogard would deploy pepper spray again in response to his statement to "shoot him" and that, even so, he did not have the time or means necessary to intervene in the moment because the earlier pepper spray had also hit him.

But the Court can just as easily envision a reasonable jury finding exactly the opposite—that Plaintiff was not violent, did not pose a threat to Defendants or the public, that Butler meant for Bogard to shoot with the gun in her hand pointed directly at Plaintiff, he had time to intervene before Bogard fired the first shot, and Bogard's second shot as she was chasing Plaintiff up the escalator (which is heard but not seen) was intentional. And for these reasons, summary judgment on the constitutional claims is clearly inappropriate here. Moreover, because Plaintiff's state law

claims and Defendants' qualified immunity defenses will be impacted by a jury's determination of whether the force used was objectively reasonable, those too are inappropriate for resolution on summary judgment. In sum, when competing interpretations of the evidence are reasonable, such determinations are uniquely reserved for a jury.

## CONCLUSION

For all the foregoing reasons, Defendants' motions for summary judgment are denied.

**DATED**: February 12, 2025

**ENTERED**:

LaShonda A. Hunt

LASHONDA A. HUNT
United States District Judge