IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARIEL ROMAN, Plaintiff, | ) | Case No.: 20 CV 01717 |
| v. | ) | Judge LaShonda A. Hunt |
| CITY OF CHICAGO, ET. AL. Defendants. | ) | |

**DEFENDANTS' JOINT RENEWED MOTION TO BAR PLAINTIFF'S EXPERT WILLIAM HARMENING**

NOW COME Defendants BERNARD BUTLER, MELVINA BOGARD, and the CITY OF CHICAGO, by and through their undersigned attorneys, and for their Joint Motion to Bar Plaintiff's Expert William Harmening, state as follows:

## ARGUMENT

This Court should bar Plaintiff from introducing any evidence by his retained expert, William Harmening, regarding the use of deadly force by Defendant Bogard as expressed in Opinions 3 of his report submitted under Fed. R. Civ. P. 26(a)(2). On October 8, 2025, this Court barred Plaintiff's putative police practices/use of force expert from rendering opinions Nos. 1 and 2 as set forth in his report submitted pursuant to Fed. R. Civ. P. 26(a)(2)(B). This Court noted that Opinion No. 3 also "seems to be a legal opinion" because it uses the exact same inappropriate conclusion-based reasoning and language as Opinions 1 and 2, specifically, that "that Officer Bogard's use of deadly force against the plaintiff was inappropriate and excessive under the circumstances." October 8, 2025 Transcript, attached as Exhibit 1, at pp. 8:14-9:10. However, the Court reserved ruling on this until the final pretrial conference, and indicated that the parties could renew their motions. *Id.* at pp. 8:14-9:24.

Defendants renew their motion as it related to Opinion 3 as it suffers from the exact deficiencies underlying this Court's reasoning in barring Opinions 1 and 2. The only possible way to

salvage this opinion would be to permit Harmening essentially to change the entire crux of his opinion as well as the bases therefor which is simply not appropriate under the circumstances of this case or Rule 26(a)(2). Additionally, the opinion lacks credible methodology so as to assist the jury. As such, this Court should follow through on its initial analysis that opinion three is a legal opinion, and therefore, should be barred. Ex. 1 at p. 8:15-18.

## I. Opinion 3 Should Be Barred Because, Like Opinions 1 and 2, It Is An Inadmissible Legal Conclusion.

This Court should bar Opinion 3 as it impermissibly encroaches on the ultimate issue in this case as it is a legal conclusion. In its excluding Harmening's Opinions 1 and 2, this Court correctly found that an opinion which concludes "that the officers used inappropriate and excessive force" is excludable because "[t]hat is ultimately the question that the jury has to decide." *Id.* at pp. 6:21-7:1. That finding is consistent with Seventh Circuit authority which explains that expert testimony that gives opinions on "legal issues that will determine the outcome of a case" are prohibited. *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2011)(quoting *U.S. v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996)); *Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013). While "it is helpful to the jury to understand what officers are trained to do and what they should do and what they should do based on established procedures and practices: but it is inappropriate to cross over and to then tell the jury that [. . .] you should find that this is excessive." Ex. 1 at p. 7:3-7. Thus, it is improper for an expert witness to give opinions that instruct the jury on the applicable and relevant portions of the law. *Davis v. Duran*, 277 F.R.D. 362, 371 (N.D. Ill. 2011). Claiming that role "'does not aid the jury in making a decision; rather it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.'" *Id.* (quoting *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005)).

As this Court correctly noted, there are permissible opinions that police practices experts can supply in use of force cases. Indeed, Defendants' expert, Emmanuel Kapelsohn, has provided such

opinions by providing a detailed examination of generally accepted police practices on use of force and tactical training for police officers without veering into territory of blatant, unadulterated legal conclusions about whether the force used was constitutionally excessive or unreasonable. Harmening's Opinion 3 crosses exactly that line and is simply not salvageable under governing law. It "tells the jury what result to reach" instead of allowing the trier of fact to make factual determinations for themselves. Specifically, Opinion 3 states:

> In the context of accepted police training and CPD policy, Officer Bogard's use of deadly force against Ariel Roman was inappropriate and excessive under the circumstances.

Harmening's Expert Report attached hereto as Exhibit 2, at p. 14. But moreover, when providing the bases for his opinions in his report, Harmening made additional legal conclusions including: "[t]his case represents an egregious misuse of deadly force"; "[Bogard's] decision to fire her weapon was not only inappropriate and excessive under the circumstances, but also very reckless;" and "[t]he shooting of Ariel Roman as unnecessary and easily avoidable." *Id.* at pp. 14-15. These opinions must be excluded.

In challenging Defendants' assertion that all of Harmening's opinions are impermissible legal conclusions, Plaintiff responded by solely relying on the Seventh Circuit's decision in *Jimenez v. City of Chicago*, arguing that "each of his opinions is concise, rooted in police procedure and policy, accepted police training, and framed in terms of professional standards." Dkt. 349 at p. 7. While the Court has already rejected Plaintiff's argument in ruling that Opinions 1 and 2 are indeed impermissible legal opinions (Ex. 1 at pp. 7:10-8:13), the argument similarly is without merit in examining Opinion 3.

In *Jimenez* the Court evaluated whether the trial court properly permitted the plaintiff's police practice expert to testify. *Id.* at 719. The expert testified in some detail about reasonable practice for police investigations and how the investigation of the murder [. . .] departed from those practices." *Id.* In challenging that decision, the defendants argued that the opinions "amounted to legal conclusions

that were not admissible" under Rule 702. *Id.* at 719. In examining the expert's testimony the Court disagreed, finding that the expert "did not offer any opinion at trial as to probable cause at any stage of the investigation of [the] murder or the prosecution of [the plaintiff]. He only testified about reasonable investigative procedures and ways in which evidence from other witnesses did or did not indicate departures from those reasonable procedures." *Id.* at 721. The Court found that the expert's testimony was appropriately "limited to describing sound professional standards and identifying departures from them." *Id.* (quoting *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997); *see also Abdullahi v. City of Madison*, 423 F.3d 762, 772 (7th Cir. 2005)). It was held that the "district court drew the line properly so that [the expert's] testimony did not stray into impermissible territory." *Id.*

Here, given Plaintiff's 26(a)(2) disclosure as it relates to Opinion 3, it is impossible for the Court to draw a similar line to ensure that Harmening's testimony does not impede on the province of the jury and provide legal conclusions as to the ultimate issue. Indeed, in barring Opinions 1 and 2, the Court explicitly acknowledged that there is a distinction between an expert providing testimony to assist the jury to understand certain police procedures, and telling the jury that they should find that an officer's actions are excessive as that "goes too far." Ex. 1 at p. 7:2-7, 7:17-19.

With respect to Opinion 3, Harmening does not discuss what would be accepted police practices as it relates to the use of deadly force. *See* Ex. 2 at pp. 14-15. Instead, he opines, without explanation or support, that "[t]he shooting of Ariel Roman was unnecessary and easily avoidable" and that the defendant officers "crossed a line." *Id.* at p. 15. Further, he opines that "[h]er inability to physically restrain Roman, or even to assist Butler, resulted in her inappropriate use of her Taser, then the reckless use of her O.C. spray next to Butler's face, and finally, to her egregiously inappropriate and excessive use of deadly force." *Id.* Not only does he intertwine both Opinions 1 and 2 (which this Court has already concluded are improper) into this Opinion 3 as causes which led to Officer Bogard's use of deadly force, but he then provides his commentary that the force was "egregiously inappropriate

and excessive." *Id.* There is nothing more that could be useful for the jury to evaluate or understand what are acceptable police practices or how specifically Officer Bogard's actions comported with such standards. *See id.*

As this Court clearly explained in the original *Daubert* hearing, an expert cannot opine that the force used was "inappropriate and excessive under the circumstances." Ex. 1 at p. 8:23-24. Indeed, courts have consistently barred expert opinions asserting that a use of force was excessive or unreasonable. For instance, expert testimony that an officer used excessive force should be excluded because it serves to induce jurors to substitute their own independent conclusions for that of the expert thereby causing the jurors to decide the case on an improper basis rather than on the evidence presented at trial. *Thompson v. City of Chi.,* 472 F.3d 444, 458 (7th Cir. 2006); *see also Trexler v. City of Belvidere*, No. 3:20 C 50113, 2023 U.S. Dist. LEXIS 12662, at *10-11 (N.D. Ill. Jan. 25, 2023)(barring plaintiff's expert's opinions that use of force was "an inappropriate use of force," "completely unjustified," and "unreasonable and excessive force" because such opinions were inadmissible legal conclusions); *Martin v. Luckett*, No. 07 C 2800, 2011 U.S. Dist. LEXIS 33713, at 3 (N.D. Ill. Mar. 30, 2011)(striking expert's opinion that use of force was "unwarranted and excessive"); *Hallett v. Richmond*, No. 05 C 50044, 2009 U.S. Dist. LEXIS 123016, at *2-3 (N.D. Ill. May 15, 2009)(reasoning that experts cannot opine as to reasonableness of force used); *Damiani v. Allen*, No. 4:16 C 00053, 2018 U.S. Dist. LEXIS 145763 (S.D. Ind. Aug. 28, 2018) (barring expert from testifying that officer used excessive force); *McBroom v. Payne*, No. 1:06 C 1222, 2011 U.S. Dist. LEXIS 39329, at *7 (S.D. Miss. Apr. 11, 2011)(barring experts from testifying as to whether force was or was not excessive because "[w]hether or not force is excessive or unreasonable is a legal conclusion and therefore constitutes inadmissible opinion")(citing *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003)); *In re Estate of Lee v. City of Washington*, No. 3:09 C 00016, 2010 U.S. Dist. LEXIS 121414, 2010 WL 4778725, at *3 (S.D. Ind.

Nov. 16, 2010)("[A]n expert's opinion that a defendant law enforcement officer used unreasonable or unnecessary force is an impermissible legal conclusion and should be excluded.").

**A. Given the limitations of Harmening's report, Plaintiff cannot resurrect his Opinions without violating Rule 26.**

The above case law indisputably establishes that Harmening's Opinion 3 is inadmissible as it amounts to nothing more than his conclusion that Bogard's use of deadly force was "excessive." An examination of his report shows that Harmening provides no further value in this regard. Indeed, in responding to Defendants' initial *Daubert* Motion to bar Harmening's opinions, Plaintiff touted that Harmening's report provides "three short, precise opinions." Dkt. 349 at p. 9. As such, if Plaintiff was to attempt to resurrect Harmening as an expert, and craft some new sanitized conclusions to be used at trial to comply with the Court's orders, that too should be prohibited, as no such opinions, analysis, basis, or testimony were disclosed during discovery in this case. *See* Ex. 2.

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert's written report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." Fed R. Civ. P. 26(a)(2)(B)(i)-(ii). "Parties who fall short on their disclosure obligations generally lose out on their expert evidence, as Rule 37(c) and plenty of caselaw make plain." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019)(citing *see, e.g.*, *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951-53 (7th Cir. 2018); *Tribble v, Evangelides*, 670 F.3d 753, 759-60 (7th Cir. 2012); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008)). And though while Rule 26 also contemplates supplemental disclosures under Rule 26(e), that is if an expert "learns that in some material respect the disclosure …is incomplete or incorrect, and if additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing" the supplementing party must supplement the disclosure by the time pretrial disclosures are due. Fed. R. Civ. P. 26(e)(1)(A), (2); *see also Uncommon, LLC v. Spigen*, 305 F. Supp. 3d 825, 843 (N.D. Ill. 2018), *aff'd*, 926 F.3d 409 (7th Cir. 2019).

Allowing Plaintiff to attempt to revive Harmening's opinions, by attempting to walk the line discussed in *Jimenez* would require an 11th hour disclosure of "supplemental opinions" not previously considered in Harmening's initial disclosure as no such analysis or discussion is present in the current iteration of his opinions. *See* Ex. 2. That would be entirely improper, especially on the eve of trial, as supplemental opinions under Rule 26(e) are not meant as a means for an expert to correct his report to comply with the law, when the supplemental information could have and should have been included in the initial disclosure. *See Sonrai Systems, LLC v. Romano*, 2022 WL 46462323 (N.D. Ill. 2022)("it is well settled, that 'parties cannot use Rule 26(e)'s supplemental disclosure obligations to extend original deadlines or 'sandbag one's opponent with claims and issues which should have been included in the original report.")(quoting *Doe 1 v. City of Chi.*, 2019 WL 5290899, *6 (N.D. Ill. Oct. 18, 2019)(quoting *Trinity Homes, LLC v. Ohio Cas. Ins. Co. Grp.*, 2011 WL 2261297, at *3 (S.D. Ind. June 8, 2011))); *Berkheimer v. Hewlett-Packard Co.*, 2016 WL 3030170, at *4 (N.D. Ill. May 25, 2016)("The Rule does not say that an expert's report should contain her best stab at an opinion that then can be supplemented, corrected, changed or augmented with new, alternative opinions after she has had a chance to think about it more . . . ."). It is far, far too late to allow Mr. Harmening to amend and replace his deficient opinions with fresh new opinions which seek to comply with governing law.

Thus, while there are, of course, circumstances where a police policies expert may render opinions about use of force, Mr. Harmening's opinions are not those. Rather, he made a decision to couch his opinions in clearly inadmissible terms. This Court's initial instinct that Opinion 3 is a legal opinion was correct. Ex. 1 at p. 8. It is far, far too late to allow Mr. Harmening to amend and replace his deficient opinions with fresh new opinions which seek to comply with governing law. Consequently, because Harmening's third opinion is a single paragraph which only serves to instruct the jury as to what findings they should reach, it should be barred by this Court. *Trexler*, 2023 U.S. Dist. LEXIS 12662, at *11 (citing *Thompson*, 472 F.3d at 458).

## II. Opinion 3 Should Be Barred Because It Is Based on Unreliable Reasoning and Methodology.

Additionally, this Court should bar Harmening's 3rd opinion as it is based on unreliable reasoning and methodology, thus failing under Rule 702. Plaintiff's sole response to this position was to argue that "each opinion is grounded in policy, accepted police training, and straightforward application of those standards to the facts." Dkt. 349 at p. 10. However, as the Court has already ruled, despite Plaintiff's assertions that Harmening's opinions "are precisely the type of specialized knowledge *Daubert* and Rule 702 contemplate", Opinions 1 and 2 cross the line and are clearly legal conclusions. As the same defense is presented for Opinion 3, with no further explanation for how the reasoning and methodology are proper, it too should fail.

Specifically, for his third and final opinion, Harmening relied exclusively on his interpretations of the video evidence and speculation. *See Ammons v. Aramark Uniform Svc., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004); *Cooper v. Chi. Heights*, No. 09 C 3452, 2011 U.S. Dist. LEXIS 56926, at 22 (N.D. Ill. May 27, 2011)("An expert witness cannot simply speculate because speculation is not based on a reliable methodology."). While Harmening briefly references CPD General Order 03-02 for his assertion that officers are trained to know that deadly force can only be used in response to an imminent threat of death or serious injury, he does not incorporate it in his reasoning. Ex. 2 at 13-14. He then merely offers another inadmissible legal conclusion by stating that "clearly there was no imminent threat at the time Bogard fired" the first shot. *Id.* at 14. Harmening identifies two bases for that conclusion.

First, Harmening asserts that "[Plaintiff's] behavior to this point was defensive and involved no assault or threat of assault to Officers." *Id.* In reaching this finding, Harmening is relying on his own self-serving interpretation of the video showing the struggle between Plaintiff and the Officers. Harmening's interpretations of the video, however, are irrelevant and unhelpful because the jurors can simply watch and interpret the videos for themselves. *See Trexler*, 2023 U.S. Dist. LEXIS 12662, at *15-16 (excluding expert's opinions and testimony regarding his interpretations of the dash-cam video

because "expert testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic")(quoting 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6265.2 (2d ed., April 2016 update))(internal quotations omitted). The relevance and helpfulness of Harmening's interpretations of the video are even further diminished by him ignoring or not even noticing the fact that Plaintiff had grabbed on to a taser and handcuffs and refused commands to drop them. *See* Ex. 2. Furthermore, since Harmening was unaware at the time of his deposition that Bogard had testified at a deposition in this case, his opinion does not take into account her testimony that Plaintiff hit her in the lip during the struggle.

The second basis for Harmening's finding that there was no imminent threat at the time of the first shot was that Plaintiff was blinded by the O.C. spray at that time. *Id.* at p. 14. This reasoning is similarly inadmissible given Harmening's testimony that it is based his interpretation of the video showing Plaintiff rubbing his eyes coupled with his speculation that Plaintiff was not seeing well. Specifically, Harmening testified that "I don't think he - - I don't think he was seeing very well and his eyes were closed." Harmening Deposition, attached as Exhibit 3, at p. 278. When asked if he had anything else to support if or how Plaintiff was affected by the OC spray, Harmening responded, "No. Just what I see on the video." *Id.* Harmening's reasoning underlying his conclusion that Plaintiff did not present an imminent threat of violence at the time of the first shot because he was still blinded by the O.C. is indisputably based on nothing more than his own inadmissible speculation and conjecture based on what he observed on the video and should thus be excluded.

Indeed, the fact that this is on video, is something that the Court expressly noted in barring Opinions 1 and 2. Because the jury will be looking at a video, where Harmening's opinions stray too far, attempting to tell the jury that what they are seeing is inappropriate or excessive under the

circumstances, crosses the line delineated in *Jimenez*, and applied by the Court here. The same defect occurs when evaluating Opinion 3.

The speculative nature of Harmening's reasoning was further highlighted at his deposition when he was asked about Plaintiff taking steps forward toward Bogard, who was standing with her back to the tracks, immediately before the first shooting. In response, Harmening disagreed with that assertion and testified, "I believe [Plaintiff] is wondering . . . I believe he was just moving, trying to get the OC out of his eyes." Ex. 3 at p. 288. His testimony makes it clear that he is simply basing his opinion on a combination of his interpretation of the video and his impermissible speculation as to Plaintiff's state of mind. *See Klaczak*, 2005 U.S. Dist. LEXIS 13607, at *22, 42 n.15.

In his report, Harmening also writes that "a further consideration that should have affected Bogard's decision to fire her weapon was the fact that they were in a busy train terminal with people around them." Ex. 2 at p. 14. That reasoning is unreliable and irrelevant given that Harmening admitted at his deposition that at the time Bogard fired the first shot, no one other than Bogard, Butler, and Plaintiff were in the immediate area. Ex. 3 at pp. 291-92.

Finally, Harmening's third opinion is completely irrelevant and will not aid the jury as to the second shooting because it improperly presumes that the second shot was intentional. Harmening's opinion is based on his limited knowledge of the evidence in this case. Specifically, he was unaware that Bogard ever testified in this matter and is also seemingly completely unaware that Bogard fired the second shot by mistake when following Plaintiff and Butler up the escalator. Given this backdrop, Harmening should be barred from offering any opinions or testimony regarding the second shot.

In short, Harmening's report and deposition establish that his methodology and reasoning as to his third opinion is unsound because it is based on nothing more than his personal interpretation of the video, rampant speculation, and ignorance of certain evidence in this case. Therefore, the Court should thus exclude Harmening's third opinion in its entirety.

## III. Opinion 3 Should Be Barred Because It Will Not Assist the Trier of Fact and Will Prejudice Defendants.

Finally, Opinion 3 will not assist the trier of fact because there is no special expertise needed for a lay person to perceive what happened in the underlying incident. This is especially true as to his opinions that stem from his interpretation of the video evidence as the jury will be fully capable of viewing the videos and reaching their own conclusions. *Trexler*, 2023 U.S. Dist. LEXIS 12662, at *15-16; *see also Garrit*, 2022 U.S. Dist. LEXIS 6759, at 26-27 (explaining there is "no more certain test for determining if an expert's testimony is permissible than the common-sense inquiry of whether an untrained layperson could intelligently reach a conclusion without the help of someone with specialized knowledge"). Rather than aiding the jury, Harmening's irrelevant opinions, as well as his reliance on speculation, will only serve to severely confuse and mislead the jury. This is especially true given his repeated injection of a probable cause/wrongful detention analysis that is not only inaccurate but also not related to any claims pending before the Court. Finally, Harmening's legal conclusions do not assist the jury because they would usurp the province of the jury and are outcome-determinative. Harmening's opinions should be excluded since none of them will assist the jury.

Next, expert evidence that is otherwise relevant may be excluded when the probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. *See Daubert*, 509 U.S. at 595. The Court's gatekeeping function "make[s] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Courts "must be careful to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves." *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). There is an "old problem of expert witnesses who are 'often the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit. There is hardly anything, not palpably absurd on its face, that cannot now be

proved by some so-called 'experts.'" *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 382 (7th Cir. 1986)(quoting *Keegan v. Minneapolis & St. L. R. Co.*, 76 Minn. 90, 95 (1899)).

In this matter, any probative value of Harmening's opinions is substantially outweighed by the danger of unfair and irreparable prejudice to Defendants given that his opinions are irrelevant, consist of inadmissible legal conclusions, are supported by unsound reasoning and methodology, and because they would only serve to confuse or mislead the trier of fact rather than assist it. Fed. R. Evid. 403. Accordingly, for the reasons set forth in this Motion, the Court should bar Harmening's remaining opinion, barring his testimony entirely at trial.

WHEREFORE, Defendants respectfully request that the Court grant Defendants' Renewed Motion To Bar Harmening's Opinion 3, and for any other relief the Court deems just.

***ATTORNEYS FOR MELVINA BOGARD:***

Borkan & Scahill, Ltd.
Special Assistant Corporation Counsel

*/s/ Whitney N. Hutchinson*
20 South Clark Street
Suite 1700
Chicago, Illinois 60603
(312) 580-1030
WHutchinson@Borkanscahill.com

Timothy P. Scahill
Whitney N. Hutchinson
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, Illinois 60603
(312) 580-1030

TScahill@Borkanscahill.com
WHutchinson@Borkanscahill.com

***ATTORNEYS FOR BERNARD BUTLER:***

Mohan Groble Scolaro, P.C.
Special Assistant Corporation Counsel

*/s/ Larry S. Kowalczyk*
Mohan Groble Scolaro, P.C.
55 W. Monroe Street
Suite 1600
Chicago, IL 60603
(312) 422-9999

Larry S. Kowalczyk
Megan K. Monaghan
Mohan Groble Scolaro, P.C.
55 W. Monroe Street
Suite 1600
Chicago, IL 60603
(312) 422-9999
lkowalczyk@mohangroble.com
mmonaghan@mohangroble.com

***ATTORNEYS FOR CITY OF CHICAGO:***

MARY RICHARDSON-LOWRY
Acting Corporation Counsel
City of Chicago

*/s/ Helen O'Shaughnessy*
Special Assistant Corporation Counsel

Nathan & Kamionski LLP
33 W. Monroe, Suite 1830
Chicago, IL 60603
Atty No. 6292881
(312) 612 1079
helen@nklawllp.com

Avi Kamionski
Helen O'Shaughnessy
Shneur Nathan
Breana Brill
Nathan & Kamionski, LLP
33 W. Monroe, Suite 1830
Chicago, IL 60603
(312) 612 -1079
akamionski@nklawllp.com
helen@nklawllp.com
snathan@nklawllp.com
amanda@nklawllp.com
jalcala@nklawllp.com
bbrill@nklawllp.com