IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIEL ROMAN,<br><br>    Plaintiff,<br><br>v.<br><br>MELVINA BOGARD and BERNARD BUTLER, each in his or her individual capacity, and the CITY OF CHICAGO,<br><br>    Defendants. | Case No. 20 C 1717<br><br>Hon. LaShonda A. Hunt |

**ORDER ON MOTIONS IN LIMINE**

Plaintiff Ariel Roman brought this federal civil rights lawsuit asserting claims of excessive force and state law battery against Chicago police officer Melvina Bogard ("Defendant Bogard"), failure to intervene against Chicago police officer Bernard Butler ("Defendant Butler"), and indemnification against the City of Chicago. On February 1, 2025, the Court denied Defendants' motion for summary judgment. (Dkt. 327). This matter is set for a jury trial beginning on December 8, 2025.

At the final pretrial conference held on December 1, 2025, the Court orally ruled on all of Plaintiff's motions in limine (Dkt. 361), and all but a handful of Defendants' motions in limine (Dkts. 356, 366). For the reasons stated on the record at the December 1, 2025 hearing, the motions in limine are resolved as follows:

**Plaintiff's**
- unopposed MIL#s 1-5, 8, 11, 14-15,18, 24, and 27 are granted;
- unopposed MIL# 6 is granted in part;
- opposed MIL#s 9, 22, 26, 28, 30, and 33 are granted;
- opposed MIL#s 10, 19, 21, 23, 25, and 29 are granted as stated;
- opposed MIL#s 7 and 31 are denied;

1

- opposed MIL#s 12-13, and 16 are denied as stated; and
- opposed MIL#s 17, 20, and 32 are reserved for trial.

**Defendants'**

- unopposed MIL#s 12, 18, and 26-33 are granted;
- opposed MIL#s 1, 3, 7, and 22 are granted;
- opposed MIL#s 2, 5 (in part), 11, 13, 14, 23, and 25 are granted as stated;
- opposed MIL#s 8 and 24 are denied;
- opposed MIL#s 17 and 21 are taken under advisement; and
- opposed MIL#s 4, 5 (in part), 6, 9, 10, 15, 16, 19, and 20 are reserved for trial.

Before the Court for reconsideration is Defendants' MIL #2 seeking to bar evidence of internal disciplinary proceedings or the outcome thereof against Defendants (along with related MIL#s 11, 13, and 14), and for ruling is Defendants' MIL #17 to admit credibility impeachment of Plaintiff under Federal Rule of Evidence 608. Having reviewed the written submissions and considered the parties' arguments at the December 1, 2025 hearing, the Court affirms that MIL #2 remains granted as stated, and denies MIL #17.

**I.      Defendants' Motion in Limine #2**

Defendants move to bar "any evidence, argument, reference, or inquiry of any witness regarding the internal disciplinary proceedings instituted against Defendants." (Defs.' Joint Mots. in Limine, at 5426-5429, Dkt. 356).[1] Relatedly, Defendants move in MIL #11 to bar Plaintiff from "introducing evidence or making any argument regarding any deviation from any internal policies of the Chicago Police Department including, but not limited to, policies governing Use of Force" (*id.* at 5449-5451); in MIL #13 to bar "evidence or argument regarding Police Tactical Response Reports ("TRRs") completed by third party Chicago Police employees" (*id.* at 5452-5454); and in

---

[1] Unless otherwise noted, page numbers in citations to the docket reference "PageID #" in the CM/ECF header of the filing, not other page numbers in the header or footer of the document.

MIL #14 to "bar any evidence or argument concerning the integrity, sufficiency, or findings of any post-shooting investigation done by (CPD), the Cook County State's Attorney Office, the Chicago Office of Police Accountability (COPA), or any other entity in relation to the incidents at issue in this case" (*id.* at 5454-5456).

The Court ruled at the hearing that MIL #2 would be granted, barring reference to COPA, Police Board (Use of Force), or similar investigatory proceedings and findings as to internal policy violations committed by Defendants in connection with this incident. Carved-out were prior statements made during those proceedings that could constitute party admissions or be used for impeachment. However, the parties were prohibited from referencing before the jury the fact that an internal investigation had been conducted. The Court applied the same reasoning to MIL #s 11, 13, and 14.

Plaintiff urged the Court to reconsider based on additional case law cited in a late-night filing on November 30, 2025 at 9:52 PM CST. (Pl.'s Mot. at 7840, Dkt. 387). Given that briefing on these contested motions in limine had been completed weeks earlier on November 3, 2025 (Dkt. 374), the parties had been notified on November 19, 2025 that the final pretrial conference would proceed at 10:00AM on December 1, 2025 (Dkt. 383), and Plaintiff relied upon state appellate court rulings from 2007 and 2021, the Court found that Plaintiff had not come close to establishing good cause for the belated request which neither the Court nor defense counsel had adequate time to review. Nevertheless, the Court agreed to take a closer look at the matter, including the "new" cases, and issue a written ruling. After doing so, the Court's position remains unchanged.

The relevance of findings from these post-incident investigations is questionable because "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitutional law has been established." *Thompson v. City of*

3

*Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) *see also Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641 at *17 (N.D. Ill. June 12, 2015) ("The Court agrees that evidence concerning any conclusion reached as a result of the IPRA investigation is not relevant to or probative of anything the jury must determine."). But even if those findings pass muster under the relevancy test, *i.e.*, "it tends to make a fact of consequence more probable or less probable," Fed. R. Evid. 401, Plaintiff falls short on the balancing inquiry under Fed. R. Evid. 403. Relevant evidence is nonetheless excludable "if its probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, [or] misleading [the] jury." Fed. R. Evid. 403. As numerous courts have consistently held, that is the situation here.

The Seventh Circuit recently upheld the exclusion of a COPA investigative report finding that the defendant police officer had violated CPD policies and Illinois law while operating his squad car. *See Arrington v. City of Chicago*, 147 F.4th 691, 703 (7th Cir. 2025). Notably, the *Arrington* plaintiffs had introduced during the trial all the evidence relied upon by COPA during the investigation. *Id.* at 703. Only the legal and administrative conclusions were kept from the jury. *Id.* The court explained that was "exactly the sort of information Rule 403 is intended to safeguard against." *Id.* Indeed, "[t]he potential prejudice from such testimony substantially outweighs what limited probative value it might have." *Gonzalez*, 2015 WL 3671641 at *17.

Plaintiff correctly notes that violations of departmental policies can be relevant to proving willfulness, an element of his state law claim against Officer Bogard. (Pl.'s Resp. at 7260, Dkt. 374) (citing *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019)); *see also Watson v. Fulton*, 15 C 11559, 2022 WL 21296130 at *5 (N.D. Ill. Feb. 23, 2022) ("As a matter of *law*, it would be improper to argue that simply because an officer violated a municipal directive, the federal constitution too was violated. But a violation of a municipal directive might have *factual*

4

relevance.") (emphasis in original). Here, Plaintiff contends that since Officer Bogard will testify that she fired the second shot accidentally, *Proano* holds that he should be allowed to introduce COPA and Police Board findings that she violated City policies as evidence of her intent. Not so.

Proano was indicted for (and ultimately convicted of) willful deprivation of constitutional rights in violation of 18 U.S.C. § 242, after he repeatedly shot at a car filled with passengers while on-duty as a CPD officer. *Proano*, 912 F.3d at 434. Prior to trial, the defendant "moved in limine to exclude evidence relating to his training on CPD policies and procedures" while the Government asked "to exclude evidence of [the defendant's] training on when use of force was appropriate under state law." *Id.* at 436. The trial court ruled that "both parties could use their respective training-related evidence either to help prove or disprove that [the defendant] acted willfully." *Id.* Accordingly, the Seventh Circuit explained that it was appropriate for the Government to offer testimony of CPD witnesses about use-of-force policies and firearms training and to introduce video footage of the shooting for the jury to consider. *Id.*

At most, *Proano* stands for the proposition that evidence about training protocols may be relevant when state of mind is at issue. *Id.* at 430. In other words, whether an officer who is aware of proper procedure acts consistently or otherwise with that training may be considered by a jury as evidence of intentionality. What the Seventh Circuit did not hold is that Police Board or COPA findings about the officer's conduct is relevant much less admissible. In fact, just a few months ago, *Arrington* reaffirmed the opposite conclusion. Nowhere in Plaintiff's filings does he attempt to square his position with that established principle.

Likewise, Plaintiff's request to introduce COPA and Police Board findings that Officer Butler deviated from policy and procedure in yelling "shoot him" in reference to "OC spray" not a firearm is a nonstarter. Plaintiff's newly-cited state law cases are not helpful. Evidence of internal

5

rule violations can demonstrate willful and wanton conduct, *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 405 (1st Dist. 2007), and testimony from those mandated to investigate these shootings may offer insight to jurors, *Givens v. City of Chicago*, 2021 IL App (1st) 192434, ¶ 74 (2021), *rev'd on other grounds*, 2023 IL 127837. That may be sufficient for Federal Rule of Evidence 401 but the evidence remains inadmissible under Federal Rule of Evidence 403 because of the substantial risk of unfair prejudice and confusion.

In a nutshell, the jury is charged with sorting through the evidence on these hotly disputed claims and determining what the facts are and whether the law has been violated. To also present them with conclusions reached during a separate investigation of the incident they are reviewing, that likely involved analysis under a different evidentiary standard, would be confusing and misleading. Jurors may think that they should give credence to what the so-called experts have determined, instead of reaching their own decision after independently evaluating all of the relevant testimony and evidence. For those reasons, the Court's ruling that evidence and testimony pertaining to internal investigatory reports and findings as described in MIL #2 (and MIL #s 11, 13, and 14) is barred stands. As discussed, only limited use of this information is allowed at trial and the existence of these investigations must not be disclosed to the jury.

## II.     Defendants' Motion in Limine #17

Defendants seek permission to cross-examine Plaintiff about a prior judicial determination that he lacked credibility during the criminal bench trial of Defendant Bogard. (Defs.' Joint Mots. in Limine at 5459-61, Dkt. 356). Federal Rule of Evidence 608(b)(1) provides that "the court may, on cross-examination," allow specific instances of conduct "to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.]" As Defendants point out, the Seventh Circuit has held that "the decision whether to allow a witness to be cross-

examined about a judicial determination finding him not to be credible is confided to the discretion of the trial judge" and "is not barred by Rule 608(b), which, . . . is a rule about presenting extrinsic evidence, not about asking questions." *United States v. Dawson*, 434 F.3d 956, 959 (7th Cir. 2006). Regardless, as Plaintiff acknowledges, the Court must consider the propriety of admitting the prior judicial finding under Federal Rule of Evidence 403. (Pl.'s Resps. to Defs.' Mots. in Limine at 7288-90, Dkt. 374).

While Plaintiff does not cite any binding authority addressing whether prior judicial determinations should be excluded as unfairly prejudicial (and the Court has not found any such cases), decisions from other courts are instructive. For example, in *United States v. Woodward*, the Tenth Circuit held that a prior judicial determination that a witness was incredible was not barred by Federal Rule of Evidence 403. 699 F.3d 1188, 1196. The *Woodward* court noted that exclusion under Federal Rule of Evidence 403 is an "extraordinary remedy" that "should be used sparingly" and found that risk of unfair prejudice could be guarded against by "limiting cross-examination, by giving limiting instructions to the jury and by setting reasonable parameters" during rehabilitation. *Id.* (citations and quotations omitted).

After reviewing the transcript of Plaintiff's trial testimony as well as the judge's ruling and considering the arguments of the parties, the Court finds that the potential prejudicial effect here cannot be minimized. As such, Defendants will not be allowed cross-examination about the prior judicial determination that Plaintiff's testimony was not credible. Although a judge's credibility determination carries great weight, the Court disagrees that such a finding regarding a specific instance (*i.e.*, Plaintiff's testimony during the criminal trial) necessarily speaks to Plaintiff's character for truthfulness or untruthfulness. Even if it did, admission of the prior judicial determination would unfairly prejudice Plaintiff, given the risk of misleading and confusing the

jury by eliciting testimony that a judge previously determined Plaintiff lacked credibility when testifying under oath, particularly as to the same facts at issue in the present case.

While Defendants have already agreed that they would not disclose that the judicial determination was made in connection with Defendant Bogard's criminal trial, Plaintiff's credibility in this contested civil case will be for the jury to decide. Both sides tell competing stories about what transpired between them. Between Plaintiff's live testimony, other possible impeachment, and a video, there will be ample evidence for the jury to consider in making its determination. That the criminal court judge found Plaintiff lied repeatedly during his trial testimony may be relevant, but cross-examination about the judicial determination as to that specific instance would provide limited, if any, probative value as to his overall character for truthfulness or untruthfulness. Quite the contrary, it would create a substantial risk of unfair prejudice due to the weight of a judge's finding on a critical issue and the real likelihood that a jury would defer to his determination. Doing that would mislead and confuse the jury about their role as the deciders of credibility in this case. To ensure a fair process, the jury should be able to judge Plaintiff's testimony against other evidence in this case without knowledge of the judicial determination that he lacked credibility in another instance. For those reasons, Defendants' MIL #17 is denied.

On a final note, the parties are reminded that pretrial evidentiary rulings are without prejudice and can be renewed before or during trial.

**DATED**: December 3, 2025

**ENTERED**:

*LaShonda A. Hunt*
L<small>A</small>S<small>HONDA</small> A. H<small>UNT</small>
United States District Judge