IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARIEL ROMAN, | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 20 CV 01717 |
| | ) | |
| CITY OF CHICAGO, ET AL. | ) | Judge LaShonda A. Hunt |
| | ) | |
|         Defendants. | ) | |

**OFFICER BOGARD'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

NOW COMES Defendant, MELVINA BOGARD, by and through her attorneys, BORKAN & SCAHILL, LTD., and pursuant to Federal Rule of Civil Procedure 50(a) moves for Judgment as a Matter of Law. In support of her motion, she states as follows:

**INTRODUCTION**

This is the appropriate juncture to consider a motion for judgment as a matter of law as it is clear from the conclusion of Plaintiff's presentation of his case that there is no evidence a reasonable jury could consider in deliberations to return a verdict for him. While there may have been lingering questions at the summary judgment juncture regarding each side's reasonable interpretation of the video, Plaintiff's trial testimony unequivocally confirms Plaintiff was "a violent man, larger than Defendants, who is physically resisting arrest for nearly five minutes in close proximity to potentially dangerous train tracks." Dkt. 327 at p. 8. Thus, it is appropriate for the Court to reevaluate Officer Bogard's arguments regarding Qualified Immunity as it relates to both shots, and intentionality specifically as it relates to the second shot. Primarily, Qualified Immunity bars Plaintiff's claims against Officer Bogard as he admitted multiple times on examination by his own attorney that he was resisting to avoid a search of his book bag and jacket which contained drugs and to evade arrest. Furthermore, it is undisputed that Officer Bogard had no intention to shoot Plaintiff a second time, so there are no

1

facts whatsoever a jury could consider when evaluating Plaintiff's claims stemming from the second shot.

## STANDARD

A directed verdict should be entered when "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). Pursuant to Federal Rule of Civil Procedure 50(a), "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. Fed. R. Civ. P. 50(a). Regarding how judges should consider this type of motion, the Supreme Court poignantly stated as follows:

> Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a *scintilla* of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed. *Anderson*, 477 U.S. at 251 (citations omitted).

Finally, the question of Qualified Immunity is a question of law for the trial court to resolve, not for the jury. *Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir. 1988).

## MATERIAL FACTS

Plaintiff's claims stem from an interaction between Chicago Police Officers Butler and Bogard and Plaintiff that started on a Chicago Transit Authority train car after Plaintiff violated a municipal ordinance and continued onto the platform at the Grand Red Line Station. The ensuing struggle that occurred on the platform lasted more than five minutes with Plaintiff's non-compliance and continued

2

resisting of arrest. Plaintiff testified on direct examination multiple times that during the ensuing fight on the platform he kept thinking that he did not want Defendants to search his book bag. December 9, 2025 Trial Transcript at 88:15-21; 90:16-24; 94:23-95:2, attached as Exhibit 1. Plaintiff also stated numerous times during the entirety of the interaction on the platform (both on direct and cross) that he was in fact "resisting", "struggling", and generally not being cooperative. *Id.* at 95:12-24 (admitted not being cooperative); 99:12-17 (admitted when he went down after the second taser he did not stop struggling); 100:7-12 (confirmed did not stop resisting when defendants were on top of him); 101:2-14 (stated did not want to be handcuffed and searched so still struggling when Defendants attempted to handcuff him); 104:16-105:5 (admitted to grabbing the handcuffs); 105:21-24 (admitted not cooperating and still struggling); 110:18-111:7 (acknowledged heard verbal commands to "Give us your hands" and "Stop resisting" and disregarded police orders and continued to struggle); 181:12-14 (admitted not cooperative when he stepped outside the platform with the two officers); 182:21-24 (confirmed resisting officers because he had illegal drugs on his person); 184:10-185:7 (resisted because did not want to go to jail after his book bag was searched because he had drugs); 185:14-24 (confirmed officers told him at least 12 times to give them his hands and told to stop doing what he was doing 16 times and disregarded those orders and continued to struggle); 189:2-25 (confirmed again could hear commands including give me your fucking hands but disregarding); 190:11-13, 191:9-12 (admitted to hearing verbal commands and disregarding them); and 246:5-248:20 (admitted he knew he was under arrest and continued to struggle and that he would do whatever he could resist after Officer Butler physically engaged him on the platform); December 10, 2025 Trial Testimony at 343:23-346:4 (confirmed video shows that he grabs the handcuffs); 347:20-25 (confirmed he is grabbing onto the handcuffs), attached as Exhibit 2.

This active resistance by Plaintiff for approximately five minutes culminates in him attempting again to furtively conceal the contents of his jacket because of the drugs. In the instance before

3

Plaintiff is first shot by Officer Bogard, Plaintiff admitted on direct that when he stood up after being pepper sprayed and feeling disoriented he went to grab his jacket because he had drugs in there. Ex. 1 at 108:19-109:8. Plaintiff also conceded that before he was shot for the first time that Officer Bogard gave four more commands to give his hands to Officer Butler. Ex. 2 at 371:17-372:5. This approximately five-minute struggle with an admitted active resistor who is attempting to conceal a book bag and bulky winter coat that has not been searched concludes with Officer Bogard firing one shot at Plaintiff. December 11, 2025 Transcript at 739:2-10 (cross of Defendant Bogard where Plaintiff's counsel asked "Q. He's actively resisting, correct? A. Yes. Q. He's struggling, right? A. Yes."); 755:21-760:25 (Defendant Bogard described on cross her mindset before firing the first shot), attached as Exhibit 3; December 12, 2025 Transcript at 999:1-1000:17, 1001:22-1002:4, 1009:11-16 (Defendant Bogard described on direct her mindset before firing the first shot), 1000:23-1001:21 (Defendant Bogard described her observations of Plaintiff's interaction with his jacket before firing the first shot) attached as Exhibit 4. Plaintiff staggered towards Officer Bogard while her back was to the electrified El tracks and she testified that in that moment she was in fear of being killed. Ex. 3 at 771:15-772:11.

After Plaintiff was shot, he turned and ran up the escalator and Officer Bogard gave chase. While running up the escalator, her unholstered gun accidentally went off and struck Plaintiff a second time. *Id.* at 779:20-781:14; 804:25-805:19; Ex. 4 at 1007:20-21, 1018:2-4, 1067:23-1068:2, 1092:5. This is uncontradicted testimony as no other party or third-party witness saw what happened on the escalator. Ex. 1 at 113:23-114:3 (Plaintiff stated that he ran up the escalator), Ex. 2 at 382:18-383:11 (Plaintiff stated he was facing forward as he ran up the escalator and did not see Officer Bogard shot him a second time); Ex. 2 at 426:21-427:9 and 437:5-23 (Michael McDunnah confirmed he did not see what happened on the escalator and did not see what Officer Bogard was doing when the second shot was fired); DX8 (cell phone video captured by McDunnah does not show the second shot on

4

the escalator); Ex. 3 at 642:2-22 (Officer Butler did not even know there was a second shot at the time); *see also* Ex. 4 at 1010:9-16.

## ARGUMENT

### I. Judgment As A Matter Of Law Is Proper Because Officer Bogard Is Entitled To Qualified Immunity.

Judgement as a matter of law is warranted as Officer Bogard is entitled to Qualified Immunity. Qualified Immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Scott v. Harris*, 550 U.S. 372, 376 n.2. (2007). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stand in litigation." *Id.*; *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). But it can be considered on a directed verdict motion. *Alvarado*, 859 F.2d at 449, 453-54. Qualified Immunity protects police "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011); *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995) ("The qualified immunity standard 'gives ample room for mistaken judgments.'"). Qualified Immunity applies regardless of whether an error is "a mistake of law, a mistake of fact, or a mistake based on mixed question or law and fact." *Pearson*, 555 U.S. at 231. The burden of defeating Qualified Immunity rests with a plaintiff. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999); *Sinn v. Lemmon*, 911 F. 3d 412, 418 (7th Cir. 2018). This is "a rather heavy burden, and appropriately so because qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who knowingly violate the law." *Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir. 1994).

Two questions must be considered in determining qualified immunity: (1) do the facts alleged show the officer's conduct violated a constitutional right; and (2) was the right was clearly established. *Saucier v.*

5

*Katz*, 533 U.S. 194, 201 (2001). Overly generalized conceptions of Constitutional rights are not appropriate bases on which to deny Qualified Immunity. *See White v. Pauly*, 580 U.S. 73, 79 (2017). Specifically:

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. The Court has found this necessary both because qualified immunity is important to "society as a whole," and because as "an immunity from suit," qualified immunity "is effectively lost if a case is erroneously permitted to go to trial,". Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal citations omitted).

In fact, the Supreme Court holds that particularity is *especially important* in Fourth Amendment cases:

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Kisela v. Hughes*, 584 U.S. 100, 104-105 (2018).

"Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id.* at 105. A plaintiff may not simply point to the fact that use of excessive force is clearly established as unconstitutional. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Maltby v. Winston*, 36 F.3d 548, 554 (7th Cir. 1994). "The principle 'do not use excessive force' is clearly established but does not tell an officer what kinds of force, in which situations, are excessive and therefore does not negate immunity." *Johnson v. Rogers*, 944 F.3d 966, 968-69 (7th Cir. 2019). Rather, the burden is on plaintiff to show case law which expressly demonstrates the specific force used has previously been determined excessive. *Rice v. Burks*, 999 F. 2d 1172, 1174-75 (7th Cir. 1993); *Brant v. Volkert*, 72 Fed. Appx. 463, 465 (7th Cir. 2003); *Dockery v. Blackburn*, 2018 WL 6629426, at *6 (7th Cir. 2018).

Qualified Immunity is appropriate as regardless of Plaintiff's subjective intent, Officer Bogard has a reasonable belief that he was an active resister who was concealing drugs in his bulky winter coat presented a threat of death of great bodily harm, and as such Qualified Immunity bars such claims. In *Brosseau v. Haugen*,

6

the Supreme Court held a police officer was entitled to Qualified Immunity when she shot an unarmed person in the back because she was concerned he was attempting to retrieve a weapon from a vehicle and potentially posed a danger to other persons in the vicinity. 543 U.S. 194, 194 (2004). The Court held Qualified Immunity applied because no case had found a Fourth Amendment violation "when an officer shot a fleeing suspect who presented a risk to others." *Id.* at 200. *Brosseau* thus "makes plain" that it was not clearly established at the time that it was unconstitutional to shoot a fleeing person to protect those whom his flight might endanger. *Id.*; *see also Plumhoff*, 572 U.S. at 779; *Estate of Green v. City of Indianapolis, Ind.*, 420 F. Supp. 3d 816, 824-25 (S.D. Ind. 2019).

In *Kisela*, a police officer shot a woman armed with a knife rather than a gun. *Kisela*, 584 U.S. 101-102. The woman had not attacked anyone with the knife but refused to drop it and had begun moving toward people in the vicinity. *Id.* The officer himself was not in any direct danger of injury. *Id.* Nonetheless, the Court held the potential danger to bystanders and the community in general as a result of these actions at minimum were immunized by Qualified Immunity because "[t]his is far from an obvious case in which any competent officer would have known that shooting [plaintiff] to protect [a bystander] would violate the Fourth Amendment" because the officer had "mere seconds" to assess the danger posed. *Id.* at 1153. Case after case has found Qualified Immunity protects officers against suit in such situations. *See Lopez v. Sheriff of Cook County*, 2020 WL 1530739, at *7 (N.D. Ill. March 31, 2020) (Qualified Immunity barred suit against individual fleeing and who had discarded weapon before being shot); *see also Goffin v. Ashcraft*, 957 F.3d 858, 859-60 (8th Cir. 2020) (Qualified Immunity for using deadly force by shooting plaintiff in back in response to individual breaking free from arrest, fled toward populated area, and moving as though he was reaching into his waistband); *Mullins v. Curanek*, 805 F.3d 760, 766-68 (6th Cir. 2015) (officer who shot individual who had discarded weapon moments before being shot); *Boyd v. Baeppler*, 215 F.3d 594, 602-04 (6th Cir. 2000) (officer shot decedent seven times after the decedent had been brought down by other officer's shot). Furthermore, courts can still consider Qualified Immunity at this juncture and have previously granted motions for

7

judgment as a matter of law. *See Ford v. Childers*, 855 F.2d 1271, 1272, 1276-77 (7th Cir. 1988) (affirming district court's granting of motion for directed verdict and finding that police officer acted reasonably when firing shots at fleeing bank robbery suspect who disregarded verbal warnings); *see also Alvarado*, 859 F.2d at 449, 453-54 (finding that the case should not have been allowed to go to a jury because the defendant was entitled to qualified immunity for the actions he took in the performance of his duties); *Rakovich v. Wade*, 850 F.2d 1180, 1212 (7th Cir. 1988) (reversing district court's denial of the officer's motion for directed verdict and finding that [c]onsidering the facts of this case, the unlawfulness of the officers' actions was not 'apparent.' We have been unable to find cases 'closely analogous' to these facts.") (citations omitted); *McGee v. Bauer*, 1990 WL 114470, at *3-*6 (N.D. Ill. July 30, 1990) (same). As a result, judgement at the close of Plaintiff's case is warranted as qualified immunity shields Officer Bogard from liability for both shots.

## II. Judgment As A Matter Of Law Is Proper For Count III Because Plaintiff Was Not Seized And There is Uncontradicted Testimony That The Second Shot Was Unintentional.

This Court should also grant judgment for Defendant Bogard for Count III because at the time the second shot was fired, Plaintiff was not "seized" as understood by the Supreme Court under the Fourth Amendment. *California v. Hodari*, 499 U.S. 621 (1991). As such, the validity of Plaintiff's claim turns on the intentionality of the second shot. Because all competent evidence on this trial record established that the second shot was unintentional, the claim cannot survive. *See Brower v. Inyo County*, 489 U.S. 593, 596 (1989); *Campbell v. White*, 916 F.3d 421 (7th Cir. 1990).

"Not every interaction between police and citizens involves a 'seizure' of the citizen." *Hall v. City of Chic.,* 989 F. Supp. 2d 699, 704 (N.D. Ill. 2013). A seizure under the Fourth Amendment requires purposeful conduct. *See Brower*, 489 U.S. at 595. Indeed, as explained by the Supreme Court in *Torres v. Madrid*, 592 U.S. 989, 999 (2021), "[a] seizure requires the use of force *with intent to restrain*. Accidental force will not qualify." *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).

8

Here, it is without dispute that at the moment the second shot was fired, Plaintiff was actively attempting to run away from the Defendant Officers. Indeed, in his own words, he was an active resistor refusing to submit to the lawful orders of the Defendant Officers and attempting to conceal his jacket and book bag which contained drugs. *See i.e.* Ex 1 at 88:15-21; 90:16-24; 94:23-95:2; 95:12-24; 99:12-17; 100:7-12. Indeed, as the video and trial testimony confirms, when the second shot was fired neither Officer was physically touching Plaintiff. Thus, as explained by the Supreme Court in *California v. Hodari*, in that moment, Plaintiff was not "seized" as under Fourth Amendment.

Specifically, in explaining the meaning of seized within the Fourth Amendment, the *Hodari* Court explained:

> The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure. Nor can the result respondent wishes to achieve be produced— indirectly, as it were—by suggesting that [the officer's] uncompiled-with show of authority was a common-law arrest, and then appealing to the principle that all common-law arrests are seizures. An arrest requires *either* physical force (as described above) *or,* where that is absent, *submission* to the assertion of authority. 499 U.S. 621, 626 (1991).

Thus, the *Hodari* Court held that the officer's pursuit, while it constituted a "show of authority" enjoining the defendant to halt, since the defendant "did not comply with that injunction he was not seized while he was tackled." *Id.* at 629.

As such, the analysis in this case turns to whether the second shot constituted a seizure. The Supreme Court guides this analysis in its holding that a "[v]iolation of the Fourth Amendment requires an *intentional* acquisition of physical control." *Brower,* 489 U.S. at 596; *Hodari*, 499 U.S. at 625-26 (a seizure of the person may be achieved by the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the person arrested; or, in the absence of physical force, by submission to a show of authority). Therefore,

9

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally <u>desired</u> termination of an individual's freedom of movement (the fleeing felon), but only where there is a governmental termination of freedom of movement <u>through means intentionally applied</u>.

*Lewis*, 523 U.S. at 944 (quoting *Brower*, 489 U.S. at 596-97) (distinguishing between government acts aimed at production of a particular result and those that simply cause a particular result) (emphasis in original)).

In light of the Supreme Court's explanation, the Seventh Circuit has emphasized the distinction between "an accidental or tortious act which happens to be committed by a governmental official and an intentional detention that rises to the level of a constitutional violation." *Bublitz v. Cottey*, 327 F.3d 485, 489 (7th Cir 2003) (quoting *Campbell*, 916 F.3d at 422-23 (internal citations omitted)). Specifically, in *Campbell v. White*, the Seventh Circuit held that an officer's action in accidentally running over a fleeing suspect did not constitute a seizure, as the officer's action was not the "the means intentionally applied to effect the stop, but was rather an unfortunate and regrettable accident." *Campbell*, 916 F.3d at 234 (citations omitted).

Consistent with that analysis, the Seventh Circuit in *Bublitz v. Cottey*, again found that where the defendant officers "did not intentionally apply *any* means in an attempt to terminate the freedom of movement of the Bublitz family – the unfortunate collision between James and the Bublitzes was not a means intended by the police to stop the family, but rather an unintended consequence of an attempt to seize James. This would seem to preclude any finding that the Bublitz family was 'seized' by the police as a result of the crash." 327 F.3d at 489. Thus, as the interaction between the defendant officers and the plaintiff in *Bublitz* was a "wholly unintended consequence of an act that happened to be committed by a government official [. . .] the Fourth Amendment is not implicated and cannot provide the basis for a § 1983 claim." *Id.* at 489; *see also Winston v. City of Chic.*, 130 F. Supp. 3d 1218,

10

1223 (N.D. Ill. 2015) (holding that "[b]ecause the Officer did not intend to intend to seize the [plaintiff], there is no Fourth Amendment violation that can provide the basis for a § 1983 claim.").

Applying these cases here, it is evident that at the moment the second shot was fired, Plaintiff was not seized. Therefore, as the evidence does not demonstrate the existence of a seizure, the reasonableness analysis from *Graham v. Connor* is inapplicable. *See Campbell*, 916 F.2d at 423 (holding that "[a]bsent a seizure, a discussion of the reasonableness of [the defendant officer's] actions would be merely academic."). Instead, the question is whether Plaintiff was stopped by "means intentionally applied." *Brower*, 489 U.S. at 597; *Campbell*, 916 F.2d at 422-23.

With regards to Officer Bogard's intention when firing the second shot, the only competent evidence is her testimony. Specifically, that the gun accidentally discharged in her hand as she was running up the escalator. Officer Bogard did not intend to use her firearm to stop or seize Plaintiff as he ran up the escalator. *See* Ex. 3 at 779:20-781:14; 804:25-805:19. There is no competent evidence to challenge her testimony in this regard. *See* Ex. 1 at 113:23-114:3; Ex. 2 at 382:18-383:11, 426:21-427:9, 437:5-23; DX8; Ex. 3 at 642:2-22. Rather, consistent with her testimony, the video confirms that after the first shot was fired, Plaintiff immediately turned and started to run up the escalator to the ticket vestibule. *See* DX8. Officer Bogard immediately gave chase, running after Plaintiff with her gun still in her hand. *See* Ex. 3 at 779:20-781:14; 804:25-805:19. The gun discharged while both Bogard and Plaintiff were still on the escalator. *Id.* Accordingly, as the second shot was entirely unintentional, the record does not support a violation of the Fourth Amendment as asserted in Count III. *See Brower*, 489 U.S. at 595; *Campbell*, 916 F.2d at 423; *Swain v. Evans*, 2007 WL 2827809 (N.D. Ill, 2007); *Salazar v. Dvorak*, 2001 WL 290358 (N.D. Ill. 2001); *Higuera v. City of Chic.*, 22 CV 964, Dkt. 61 at p. 2 (order granting the defendants' motion to dismiss allegations of excessive force).

### III. Judgment for Defendant Bogard Is Proper For Plaintiff's State Law Claims.

Judgment for Defendant Bogard is proper for Plaintiff's battery claims asserted under Illinois law against Bogard which stem from the two shots: Counts IV and V. Bogard is entitled to judgment on these claims for multiple reasons: (1) shot 1 was legally justified under Illinois's statutes governing both a peace officer's use of force in making an arrest, 720 ILCS 5/7-5; (2) as all competent evidence supports that shot 2 was unintentional, there is no viable battery claim; and (3) Bogard is entitled to immunity under Illinois's Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"), 745 ILCS 10/1-101 *et seq.* for both shots.

#### A. The First Shot Was Legally Justified Under Illinois Law.

As addressed above, because shot one was objectively reasonable, it was legally justified under 720 ILCS 5/7-5 in 2020. This statutory prevision provides that a police officer is justified in using deadly force when she "reasonably believed, based on the totality of the circumstances, that such force is necessary to prevent death or great bodily harm to [herself] or such other person." 720 ILCS 5/7-5(a). Where, as here, an officer's use of deadly force was objectively reasonable, "this provision justifies the officer's use of force and protects the officer from civil liability based on the use of force." *Mendez*, 2022 WL 4466235, at *19 (citing *see Ybarra*, 946 F.3d at 981 & n. 1; *Muhammed*, 316 F.3d at 683; *see also Wilson v. City of Chic.*, 758 F.3d 875, 879-80 (7th Cir. 2014) (a plaintiff asserting a battery claim under Illinois law must prove that the touching (in that case, a shooting) lacked justification)). Considering the trial testimony that Plaintiff consistently admitted that he was an active resistor attempting to conceal drugs in his book bag and bulky winter jacket (Ex. 1 at 88:15-21; 90:16-24; 94:23-95:2; 95:12-24; 99:12-17; 100:7-12; 101:2-14; 104:16-105:5; 105:21-24; 108:19-109:8; 110:18-111:7; 181:12-14; 182:21-24; 184:10-185:7; 185:14-24; 189:2-25; 190:11-13, 191:9-12; and 246:5-248:20; Ex. 2 at 343:23-346:4; 347:20-25) and Defendant Bogard's testimony that she was in fear of her life (Ex. 3 at 771:15-

772:11), there is no evidence a reasonable jury could consider to find for Plaintiff on Counts IV and V and judgment should be entered for Defendant Bogard.

### B. There Is No Viable Battery Claim Where The Second Shot Was Unintentional.

Count V also fails as all competent evidence supports that shot two was unintentional. "In Illinois, battery is an intentional tort with three elements: (1) an intentional act by the defendant (2) that results in offensive contact with the plaintiff (3) without the plaintiff's consent." *Arrington v. City of Chic.*, 2022 WL 2105871, at *13 (N.D. Ill. June 10, 2022) (citing *Obermeier v. Nw. Mem'l Hosp.*, 134 N.E.3d 316, 333-34 (Ill. App. Ct. 2019); *see also Wagner v. Cook Cty. Sherriff's* Office, 453 F. Supp. 3d 1101, 1102 (N.D. Ill. 2020) ("To prove battery, plaintiff must show that [the defendant] 'intended to cause a harmful contact, that harmful contact resulting and that the plaintiff did not consent.'"); *see also Bladdick v. Pour*, 2010 WL 5088815, at *5 (S.D. Ill. 2010) ("[N]o state action would lie where an off-duty officer whose service weapon discharged accident and hurt someone."). As all evidence on this trial record supports that the second shot was unintentional as there is no evidence the jury could consider to render a verdict for Plaintiff. *See* Ex. 3 at 779:20-781:14; 804:25-805:19. Consequently, Count V must be dismissed as there is no evidence to satisfy the intent element under Illinois law.

### C. Officer Bogard Is Entitled To Immunity Under The Tort Immunity Act.

Further, as the two shots were both objectively reasonable as articulated above based on the trial record before this Court, Officer Bogard is also entitled to immunity from Plaintiff's battery claims under the Tort Immunity Act. *See Mendez*, 2022 WL 4466235, at *19. The Tort Immunity Act "provides immunity to local government employees from liability for acts committed in the execution or enforcement of any law unless that act was willful or wanton." *Davis v. City of Chic.*, 2014 IL App (1st) 122427, ¶ 117. "[W]here an officer's actions in using deadly force were objectively reasonable . . . they cannot be willful and wanton." *Mendez*, 2022 WL 4466235, at *20 (citing *Ybarra*, 946 F.3d at

981 n.1; *Horton*, 883 F.3d at 954). Consequently, this Court should grant judgment for Defendant Bogard on his civil battery claims.

## CONCLUSION

WHEREFORE, Officer Bogard seeks an order from this Court granting judgment as a matter of law on all claims, any other relief this Court deems to be proper.

| | |
|---|---|
| Timothy P. Scahill | Respectfully submitted, |
| Steven B. Borkan | |
| Whitney N. Hutchinson | By: s/ Whitney N. Hutchinson |
| Christiane E. Murray | Whitney N. Hutchinson |
| Special Assistants Corporation Counsel | |
| Borkan & Scahill, Ltd. | |
| 20 S. Clark Street, Suite 1700 | |
| Chicago, Illinois 60603 | |
| 312-580-1030 | |
| Counsel for Defendant Melvina Bogard | |